# United States Court of Appeals

## For the First Circuit

———————————

No. 24-1154

RENEE SEVELITTE,

Plaintiff – Appellant,


v.


THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,

Defendant/Third Party Plaintiff – Appellee,

ROBYN A. CAPLIS-SEVELITTE, Personal Representative of the Estate of Joseph F. Sevelitte

Third Party Defendant – Appellee

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(NO. 11:21-cv-10630 LTS)


Brief of Plaintiff – Appellant

Renee Sevelitte

———————————


William K. Fitzgerald
First Circuit No. 12022895
Law Office of W. Kevin Fitzgerald
9A Simmons Road
Nahant, MA 01908
(617) 365-3477

# Corporate Disclosure Statement

Renee Sevelitte is an individual residing at 18 Oakwood Lane, Kennebunk, Maine, and would not be required to file a corporate disclosure statement pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure.

# Table of Contents

Corporate Disclosure Statement                                    1

Table of Contents                                                 2

                        `

Table of Authorities                                              4

Jurisdictional Statement                                          6

Statement of Issues Presented for Review                          7

Concise Statement of the Case                                     8
A. Relevant Facts                                                 8
B. Procedural History                                            8
C. Rulings Presented for Review                                  9

Summary of Argument                                              10

Argument                                                         11
1. Standard of Review                                            11
2. The Divorce Agreement is an Exception to M.G.L. 190B: 2-804   12
3. Full Force and Effect                                         20
4. Ambiguity                                                     21

Summary of Argument                                              21

Conclusion      22

Certificate of Service      24

Statement of Compliance      25

Addendum      26

# Table of Authorities

**Cases**                                                           **Page**

Galera v. Johanns                                           11
612 F. 3rd 8,12 (2010)

Thompson v. Coca-Cola Co.                           11
522 F. 3rd 168, 175 (2008)

Cox v, Hainey                                               11
391 F. 3rd 25,29 (2004)

Sanchez v. Alvarado                                     11
101 F. 3rd 233, 227 (1996)

Maymi v. P.R. Port Authority                       11
515 F. 3rd 20,25 (2008)

Poller v. Columbia Broadcasting System, Inc.      11
368 U.S. 464 (1962)

Sevelitte v. Guardian                                  12
55 F. 4th 71 (2022)

Gleed v. Noon                                                      17

415 Mass 498, 500 (1993)


Metropolitan Life Insurance Company v. Garron                      20

2019 WL 7708852 (2019)


Foster v. Hurley                                                   20

826 N.E. 2nd 719, 721, 725-726 (2005)


Narragansett Indian Tribe v. Rhode Island                         20

449 F. 3rd 16, 22 (2006)


**Statutes**

M.G.L. 190B: 2-804                                                 7


**Rules**

Federal Rules of Appellate Procedure                              1

28 U.S.C.A.                                                        6

Federal Rule of Civil Procedure 56(a)                             11

## Jurisdictional Statement

Pursuant to the Diversity of Citizenship, the United States District Court for the District of Massachusetts had subject matter jurisdiction over the Appellant Renee Sevelitte's claim for the beneficial interest of a whole life insurance policy death benefit being held by the District Court. The funds having been placed on deposit with the District Court prior to Guardian Life Insurance Company of America's being dismissed from this action.

The appeal is timely under 28 U.S.C.A. rules of procedure because the Notice of Appeal in this civil case was filed within 30 days of the District Court's decision. This Court has jurisdiction pursuant to 28 U.S.C.A. Rules of Appellate Procedure Rule 3 because the decision of January 24, 2024, on the motion for summary judgment by the Estate of Joseph F. Sevelitte, Robyn Caplis-Sevelitte Personal Representative, is a final judgment that disposes of all of the claims of Renee Sevelitte in Case Number 1:21-cv-10630-LTS. The timely "Notice of

Appeal" was filed on February 9, 2024, in the United States District Court ECF system.

## Statement of Issues Presented for Review

1) Where the District Court properly interpreted the prior decision of the U.S. First Circuit?

2) Did the District Court properly apply the prior findings of the U.S. First Court of Appeals?

3) Was the application of contract law by the District Court correct?

4) Did the District Court properly interpret the evidence of the Expert submitted by the Third Party Defendant, the Estate of Joseph F. Sevelitte?

5) What does a finding of an exception to the application of M.G.L. Chapter 190B: 2-804 mean regarding the beneficial interest of an insurance contract?

**Concise Statement of the Case**

**A. Relevant Facts**

Joseph F. Sevelitte and Renee Colantonio were married on October 6, 1984. In 1996, Joseph F. Sevelitte purchased a whole life insurance policy from Berkshire Life Insurance Company. The Berkshire Life Insurance Company was acquired by the Guardian Life Insurance Company and assumed all the contractual liabilities of Berkshire. Joseph F. Sevelitte and Renee Sevelitte were divorced in 2013. As a part of the divorce proceedings, the parties entered into and executed an Agreement that divided the marital assets between the parties and the rights and obligations of each of the parties. The Agreement was amended by a Modification Agreement entered into and executed by the parties in 2016. Joseph F. Sevelitte died on December 23, 2020, from COVID-19. After the death of Mr. Sevelitte, the Appellant, Renee Sevelitte applied for the death benefits of the only whole life insurance policy the couple had owned per the terms of the 2013 Agreement.

Guardian Life Insurance Company of America denied the application of benefits claiming the language of the Agreement was not clear and that M.G.L. Chapter 190B: 2-804 precluded her as beneficiary.

## B. Procedural History

Renee Sevelitte, a resident of Salisbury Massachusetts at the time, filed suit in Essex County Superior Court against Guardian Life Insurance Company of America for the death benefit of the policy and other claims. Defendant, Guardian Life Insurance Company of America, removed the matter to the Federal District Court for Massachusetts on the basis of diversity of Citizenship and impleaded the Estate of Joseph F. Sevelitte, Robyn Caplis-Sevelitte Personal Representative. The Estate of Joseph F. Sevelitte brought a claim and an action for Trustee Process against Renee Sevelitte, Renee Sevelitte in turn filed claims against the Estate of Joseph F. Sevelitte.

Guardian placed the death benefit of the policy with the Federal District Court and filed a motion for Summary Judgment. The District Court granted the motion of Guardian and dismissed them from the action, dismissed the claims of the Estate and counterclaims of the Plaintiff for a lack of jurisdiction, and found the Guardian Policy was the policy covered by Exhibit G paragraph 6, and awarded the death benefit to the Estate of Joseph F. Sevelitte.

Plaintiff appealed that decision to this Court. The U. S. Court of Appeals affirmed the decision of the District Court with regard to Defendant Guardian and further affirmed the decision regarding the issue of jurisdiction regarding the claims of the Estate and counterclaims of the Plaintiff, and vacated the award of the death benefit to the Estate of Joseph F. Sevelitte. In making these findings the

First Circuit Court of Appeals found that the Agreement was a contract exception to M.G.L. Chapter 190B: 2-804.

## C. Rulings Presented for Review

The District Court erred in the application of contract law in awarding the policy proceeds to the estate. The Court did not apply the "Contract Exception" to the application of M.G.L. Chapter 190B: 2-804, the Court used standards of contract law that it determined to be applicable to defeat the "Contract Exception" interpretation and the contents of a report of an expert witness in granting the motion for Summary Judgment for the policy proceeds to the Estate of Joseph F. Sevelitte in error.

## Summary of Argument

The U.S. First Circuit Court of Appeals previously found that the Agreement was a "Contract Exception" to the application of the revocation on divorce provisions of M.G.L. Chapter 190B 2-804.

The report of the expert witness of The Estate Of Joseph F. Sevelitte creates an irrefutable case for the "Court Order Exception" to the application of M.G.L. Chapter 190B: 2-804. However, in arguing that the Plaintiff obtained an unfair advantage in the Agreement dividing the marital estate, the expert erred by not valuing all of the assets of the marital estate.

There are two exceptions to the Massachusetts Uniform Probate Code of revocation on divorce provisions of the beneficial interests in an insurance policy created in this case. Applying either of the exceptions means, simply, that there is no revocation on divorce. Without the application of revocation on divorce the named beneficiary remains the person to whom the death benefits are due.

The incorrect remarks regarding the benefits each person had of the marital estate are designed to malign the Plaintiff and are not only incorrect, they are not relevant to the application of law in this matter.

The use of the terms, "full force and effect" are designed to maintain both the obligation to maintain the policies and the beneficiary interest of the Plaintiff.

## Argument

### 1. Standard of Review

The First Circuit Court of Appeals' review of the District Court's grant of summary judgment is de novo. *Galera v. Johanns*, 612 F. 3d 8, 12 (1st Circuit 2010). The record is reviewed in a light most favorable to the nonmoving party, *id*. At 10n.2, and make all reasonable inferences in that party's favor. *Thompson v. Coca-Cola Co*., 522 F.3d 168, 175 (1st Circuit 2008).

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rules of Civil Procedure 56(a); *Cox v. Hainey,*391 F 3d 25,29 (1st Circuit

2004). The Court looks to the pleadings, depositions, answers to interrogatories, admissions on file and any affidavits in making the determination. *Thompson,* 522 F. 3d at 175. A dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *id.* (quoting *Sanchez v. Alvarado*, 101 F 3d. 233, 227 (1st Circuit 1996). A fact is material if it has potential to determine the outcome of the litigation. *Maymi v. P.R. Port Authority,* 515 F. 3d 20,25 (1st Circuit 2008).

The non-moving party in this case is Plaintiff Renee Sevelitte.


## 2. The Divorce Agreement is an Exception to M.G.L. 190B: 2-804

This Court previously found that as "Renee has plausibly alleged that she remains the beneficiary under the contract exception, we need not determine whether the court order exemption also applies" *Sevelitte v. Guardian,* 55 F. 4th 71 (2022). The Court found that the contract exception applied to this matter. The issue becomes what is being "excepted." What is being excepted is "revocation on divorce."

The three statutory exceptions in M.G.L. Chapter 190B: 2-804 are the three ways in which the beneficiary named in the insurance policy continues to be the named beneficiary of the policy. The specific terms exception requires that the beneficiary be renamed in the policy (governing document) at the time of divorce, that interpretation was dismissed by this Court in the decision of December 7, 2022. A "Court order" exception, which this Court determined was not needed, in the same decision, as this Court found the "division of marital assets" agreement

to be applicable.

Once an exception to the application of the "revocation on divorce" clause of M.G.L. Chapter 190B: 2-804 has been established, the beneficiary of the policy remains unchanged. The purpose of M.G.L. 190B: 2-804 revoking the designation of the beneficial status was to prevent an unjust enrichment event to a spouse of an asset not contemplated as divided by the parties. Here the parties contemplated the "cash value" of the policy and made it part of the division of assets as noted by the Defendant's expert, paragraph 39 page 14 of Expert Report of Susan M. DeMatteo, Esq. Addendum 4. By including the division of the cash value the parties made the insurance policy a part of the division of marital assets. As the Agreement falls within the "contract" exception and as the policy is both mentioned and allotted between the parties, there is no change in the beneficiary and Renee remains the beneficiary. Mr. Sevelitte could have at any time during divorce negotiations maintained the right under the divorce agreement to change the beneficiary, he did not bargain to be able to make such a change. Leaving the policy out of the marital asset agreement would have terminated Renee's designation as the beneficiary as a matter of Law. Here, the Agreement, as a whole divides the entire marital estate. The asset value of the Guardian policy is dealt with in Exhibit G, 6, as decided by the Federal District Court in 2022. At no point have the parties to this action argued that Exhibit G 6 is a reference to any other policy or contract. Nor has Defendant suggested anyone other than Plaintiff is designated in the policy as the beneficiary of the Guardian policy. Other exhibits in the Agreement deal with the marital home, a home given to Mr. Sevelitte by his parents, Child Support, Child Custody, and more. The Agreement cannot be divided into subsets and must be taken as a **whole** as it divides the **whole** marital

estate. The Agreement as a **whole** meets the contract exception to the application of revocation on divorce. As the Agreement is a division of the marital assets, it "revokes any revocable (1) disposition…" as defined in M.G.L. 190B: 2-804. The Agreement excepts the revocation on divorce and makes it inapplicable. (6) (b) (1). "Revocable … disposition" is defined in 190B-2:804 (6). Therefore, the Agreement as a whole and Exhibit G (6) revokes the revocable disposition. Without a revocable disposition of the beneficiary of the insurance contract, there is no change in the beneficiary named in the policy and Renee Sevelitte remains the beneficiary.

Renee conducted discovery in a matter to enforce the terms of the marital division of assets contract in the Essex County Massachusetts Superior Court. Defendant failed to fully answer the interrogatories and request for the production of documents, Addendum 5. That, Counsel for Mr. Sevelitte prepared a memorandum from which an expert prepared a statement was not discoverable by Renee. If Valerie Ross Esq. were not Counsel of record to the Estate of Joseph F. Sevelitte pending before the Middlesex County Massachusetts Probate Court, the memorandum **might** have been discoverable if it had been in existence during the discovery period of the matter pending in Federal District Court. The Affidavit of Valerie Ross, Esq. dated September 15, 2023, was **not discoverable** as discovery had been closed for months. As Counsel of record, any information Plaintiff may have sought would have been deemed privileged. Renee is nearly indigent; the Massachusetts Rules of Civil Procedure allow for a larger number of Interrogatories than the Federal Rules of Civil Procedure. Renee was attempting to be efficient in the use of Attorney's costs. Renee fully complied with the Defendant's discovery requests, including a lengthy deposition that was designed

to be intimidating to Renee. After 5 hours of extensive interrogation which reduced Renee to tears through harassment, no information was found of use by Defendant. In fact, the Defendant has misrepresented to the Court a document provided by Plaintiff in Discovery. The Fidelity Term Life Insurance Policy referenced in Exhibit G paragraph 5 was provided to the Defendant and is attached hereto as Addendum 6 and names Renee Sevelitte as Beneficiary on page 1 of the Application and as defined on page 5 of the policy. The marital home was refinanced through two financial institutions subsequent to the purchase of this policy. Ultimately leading to financing which included mortgage insurance in the mortgage agreement.

Defendant engaged an Expert in divorce matters. The Expert relied on the "pink form" financial statement and the "Agreement". Missing from the "pinkform" but listed as an asset in the Agreement is a 2-family house located at 13 Allen Court Medford Massachusetts and referenced in Exhibit E of the Agreement. Mr. Sevelitte became the owner in 2005 see Addendum 7. This two-family home had an approximate value at the time of divorce of $500,000.00. That value is not accounted for by the Agreement. It is also attributed to Mr. Sevelitte in the division of assets. Where the Expert has stated Renee received 60% of the estate (Renee was the holder of a note from Joseph F. Sevelitte in the amount of $40,000.00 which is representative, of 10% of the value of the marital home) in fact, Mr. Sevelitte received over 75% of the marital estate when the house at 13 Allen Court is added to the marital assets. The marital home was sold under the terms of the Agreement for approximately $400,000.00, which was approximately $200,000.00 after mortgage retirement. Mr. Sevelitte received 40% or $80,000.00 plus the retirement of his note. When this amount is added to the value of the multi-family

home at 13 Allen Court, Mr. Sevelitte received $620,000.00 of the marital estate and Renee Sevelitte received $120,000.00. It needs also to be noted in the Sevelitte Family Revocable Trust Attached as Addendum 8, that Robyn Caplis-Sevelitte does not have a life estate, but a right to occupy at a fee if she chooses. Joseph M. Sevelitte is the sole named Beneficiary of the Trust.

The Expert in her report makes careful and detailed reference to the process of having a division of marital assets agreement approved and accepted by the Family Court. First, the Agreement must be determined to be a division of the marital estate by the Judge presiding over the divorce action. She then questioned the parties to the Agreement to ensure they understood the Agreement. When the Judge received concurrence from the participants in the terms and, the Judge will then incorporate the Agreement into her Order of Divorce. By incorporating the Agreement into the Order of Divorce, the Agreement has been made part of the Court Order exception to M.G.L. Chapter 190B: 2-804. The Defendant's expert has explicitly defined the Court Order exception that this Court did not previously deem necessary to consider. Defendant has submitted evidence that proves Plaintiff's case: that the Agreement is not only a division of Marital assets but also a "Court Order". The "Court Order" exception was drafted with this circumstance in mind. In submitting the detailed opinion of their expert the third party Defendant has accepted that the Court Order exception to M.G.L. 190B: 2-804 applies to this case.

On a Rule 56 Motion, the facts must be taken in the context most favorable to the non-moving party. "We look at the record on summary judgment in the light most favorable to Poller, the party opposing the motion, and conclude here that it should not have been granted." *Poller v. Columbia Broadcasting System, Inc*. 368

U.S. 464 (1962)context most favorable to the non-moving party, Renee, it is clear that the Agreement is both a division of Marital assets contract and a part of a Court Order of Divorce Nisi and an exception to the rule of revocation on divorce.

"Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case "show that (except as to the amount of damages) there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. Rules Civ. Pro., 28U.S.C.A." *Poller v. Columbia Broadcasting System, Inc.* 368 U.S. 464 (1962). In this matter, the issue of determining whether there exists an exception to M.G.L. 190B-2:804 is a continuing issue of disagreement. The District Court was obligated to determine if any exception to the rule of 'revocation on divorce' was applicable.

The District Court notes:" The Divorce Agreement was accepted by the state probate court and incorporated into its June 2013 Judgement of Divorce Nisi." The District Court recognized that the Agreement was part of a Court Order. In declaring the Agreement a part of a Court Judgment and not applying the exception for a "Court Order", the District Court failed to enforce the law of its own conclusions.

The submission of the expert, Susan M. Matteo, Esq., in this matter only favors Plaintiff. In B.2. 38 of her report the expert states: "A term policy is not considered a marital asset but instead a "conditional interest subject to defeasance until the death of the insured." *Gleed v. Noon*, 415 Mass 498, 500 (1993). The policies in Exhibit G 1 and 5 were both term life policies. In B.2. 39 and 40 of the report, the expert goes into specific reference that the Guardian Life Insurance policy was specifically addressed in Exhibit G paragraph 6. In B.3. 41, the expert

refs to the death benefit as "double dipping". For there to be "double dipping" Joseph Sevelitte would have to be living. Double dipping applies when an asset is left out of the Agreement and a spouse wishes to renegotiate the agreement, or if the asset value is in dispute and as a result, a spouse wishes to renegotiate the marital assets agreement. In order to renegotiate, both parties to the agreement would need to be alive for the negotiations. Upon his death, the beneficial interest of the policy passed to Renee according to the policy terms. As the policy is specifically referenced in Exhibit G 6 as noted by Attorney DeMatteo, it is a division of marital assets exception to 190B:2-804. As an exception to 190B:2-804, the contract revokes any revocation of beneficial designation on divorce under Chapter 190B. If the parties went to the extreme of dividing the cash value of the policy, they could have adjusted the death benefit if that had been their intent at the time. It was never the intent of the parties to reallocate the death benefit. In fact, according to Susan M. Matteo, Esq. in section V. c., "Massachusetts matrimonial law does not consider *benefits* of a life insurance policy as a marital asset…." If the death benefit is not a marital asset, there cannot be 'double dipping'. Double Dipping would require the beneficial interest to be a marital asset available for renegotiating, it is not.

Renee's rights under the Agreement have not been terminated in matters of enforcing the Agreement Paragraph 2.

Defendant argues that there is a requirement that the "express terms" exception must apply. Attorney Matteo is quite specific that the Modification Agreement meets the "express terms" exception. This Court previously decided in this matter that the express terms exception required the insurance policy, the governing document, to rename the beneficial interest. The Modification

Agreement does not meet the standard of express terms, but it continues the contract exception, that the language used is different and is an expression of the care that had grown in the practice of family law in the Commonwealth in the 3 intervening years.

The Affidavit of Susan M. DeMatteo, Esq., submitted to the Court, makes clear that the only interpretation of the Agreement is as an **EXCEPTION** to the rule of 'revocation on divorce' both as a division of marital assets and as a Court Order. As the exception creates no change of the named beneficiary, Renee continues as the sole beneficiary of the Guardian Life Insurance policy and is entitled to the death benefit granted under the policy.

Finally, after failing to apply the Court Order exception to Chapter 190B-2:804, the District Court determined that the legal standard to be applied is, "whether the contract exception is satisfied by the language of the Divorce Agreement." As previously noted, the parties understood the contract as part of the formalization of the divorce. The Judge of the Essex County Probate and Family Court found the terms of the Agreement sufficiently clear as to be incorporated into the Order of Divorce Nisi. In the previous decision of the District Court in January of 2022, the District Court found the language clear in determining that Exhibit G paragraph 6 was indeed the Guardian Policy. The issue has never been whether the contract itself was ambiguous but rather was the description of the Guardian policy was ambiguous.

The Defendant has never argued that the Guardian policy was not the policy described in Exhibit G paragraph 6. The Agreement as a whole being a contract dividing the marital assets was never a question before the Court. The Court's determination that the language of the Agreement is ambiguous is not correct and

in contradiction to the previous findings of the District Court and the U.S. First Circuit Court of Appeals: "because the Divorce Agreement is a "contract relating to the division of the marital estate made between the divorced individuals before or after the…divorce." Mass. Gen. Laws ch. 190B: 2-804(b)" *Sevelitte v. Guardian*, 55 F 4th 71 (2022). As this Court has ruled the Divorce Agreement meets the contract exception, the District Court erred in finding it did not.

The question is what is the exception made? The exception "revokes the revocation" M.G.L. Chapter 190B: 2-804(b). If the revocation is in itself revoked, the named beneficiary of the policy continues to be the named beneficiary. No further terms or explanation is necessary. Renee Sevelitte has not had her designation of beneficiary revoked by the existence of the exception.

"Revocable … disposition" is defined in 190B-2:804 (6). Therefore, the Agreement as a whole and Exhibit G (6) revokes the revocable disposition. Without a revocable disposition of the beneficiary of the insurance contract, there is no change in the beneficiary named in the policy and Renee Sevelitte remains the beneficiary.

### 3. Full Force and Effect

The language of the Agreement is unambiguous taken as a whole, and requires the whole life policy to be kept in "full force and effect". This language, "full force and effect", has been accepted by the Massachusetts Courts as requiring no changes to any terms of the policy referenced, *Metropolitan Life Insurance Company v. Garron* 2019 WL 7708852. If there are no changes to any terms, that

would include the designation of the beneficiary. The beneficiary is not changed by M.G.L. Chapter 190B: 2-804.

"Massachusetts courts have recognized as much with respect to beneficiary designations,…See, e.g. *Foster v. Hurley,* 826 N.E. 2d 719,721,725-26 (Mass.2005) (finding where ex-wife agreed *to* maintain unnamed insurance policies in "full force and effect" with ex-husband as beneficiary, that ex-wife could not later change beneficiary designation)" *Sevelitte v. Guardian,* 55 F 4th 71 (2022) "*Narragansett Indian Tribe v. Rhode Island,* 449 F3d 16, 22 (1st Circuit 2006) (finding the phrase "full force and effect" to be "unqualified language" that is "broad in its terms"). *Sevelitte v. Guardian*, 55 F4th 71 (2022). A broad application would be that the policy is maintained as well as the named beneficiary.

Simply, if the terms of the Guardian policy must be kept in full force and effect, there can be no change in the beneficial designation. This is no different than *Foster,* the owner of the policy is prohibited from making a change in the beneficiary of the policy. Joseph F. Sevelitte understood this and never did make a change in the beneficiary.

## 4. Ambiguity

There is no ambiguity claimed in the Guardian Policy itself.

All parties agree that Exhibit G paragraph 6 of the Agreement. The description of the policy as the "whole life" policy rather than the Guardian policy was the point of "ambiguity". The issue of the Guardian Policy being the whole life policy has been agreed by the parties and therefore there is no ambiguity. If the

words "Guardian Policy number ****" were in place of "whole life" the matter would have been quickly resolved as the Agreement is an exception to the application of M.G.L. Chapter 190B: 2-804.

As the issue of ambiguity has been resolved between the parties and there is no ambiguity within the policy, Renee Sevelitte continues as the policy beneficiary.

## Summary of Argument

The insurance policy at the center of this case has been kept in full force and effect as required by Exhibit G paragraph 6 of the Agreement. The death benefit was not a marital asset that could be split between the parties, and Renee Sevelitte has at all times been the named beneficiary of the policy at the center of this case. There has been no ambiguity between these parties that the policy in Exhibit G paragraph 6 is the Guardian Life Insurance policy. The Agreement is an exception to the automatic implementation of revocation on divorce as a contract dividing the marital assets and as a Court Order as described by the Defendant's Expert. As a consequence, the Federal District erred in not applying the exception to M.G.L. 190B: 2-804. The Federal District further erred in awarding the beneficial interest to the Estate of Joseph F. Sevelitte. The award of the beneficial interest in the policy belongs to the named beneficiary, Renee Sevelitte.

## Conclusion

Renee's designation as the beneficiary has not been revoked by Statute, nor

was it bargained away in the division of marital assets Agreement, the policy was kept in full force and effect including the naming of Renee Sevelitte as beneficiary. There is no disagreement that the Agreement Exhibit G paragraph 6, Addendum 8, is the Guardian Policy at this point, and there is no disagreement that Renee Sevelitte is the named beneficiary. The only conclusion is that Plaintiff Renee Sevelitte is entitled to policy benefits currently being held by the District Court.

Plaintiff would respectfully ask the Court to award the funds being held by the District Court be awarded to Plaintiff Renee Sevelitte.

Respectfully Submitted,

 *s./ W. Kevin Fitzgerald*

W. Kevin Fitzgerald

Court of Appeals Bar No. 1202895

The Law Offices of W. Kevin Fitzgerald

9A Simmons Road

Nahant, MA 01908

617-365-3477

Attorney for the Appellant Renee Sevelitte

April 11, 2024

**United States Court of Appeals For The First Circuit**

Certificate of Service

I, W. Kevin Fitzgerald, hereby certify that on April 11, 2024, I electronically filed this Appellant's Brief with the Court using the CM/ECF system. I certify that the following counsel is a registered CM/ECF user and will receive service through the CM/ECF system:

Joshua Garick

Law Offices of Joshua N. Garick, P.C.

34 Salem Street, Suite 202

Reading, MA 01867

## Certificate of Compliance

This brief complies with the type-volume limitation of the Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 4988 words uses a monospaced typeface and contains 348 lines of text, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of the Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font monospace typeface using Microsoft Word with 14 characters per inch Times New Roman font.

Dated: April 1, 2024


 *s. / W. Kevin Fitzgerald*

W. Kevin Fitzgerald

Attorney for the Appellant

# ADDENDUM

Addendum 1

Copy of the Docket for 21-cv-10630 LTS         1


Addendum 2

Order on The Motion For Summary Judgment        20


Addendum 3

Judgment         45


Addendum 4

Notice of Appeal         47


Addendum 5

Defendant's Answers to Plaintiff's Discovery

Essex Superior Court         50

Addendum 6

Fidelity Term Life Insurance Policy                          58
Exhibit G paragraph 5                                        60

Addendum 7

Quitclaim Deed 13 Allen Court, Medford, MA                   62

Addendum 8

Exhibit G of the Agreement                                   61

# United States District Court
# District of Massachusetts (Boston)
# CIVIL DOCKET FOR CASE #: <u>1:21−cv−10630−LTS</u>

| | |
|---|---|
| Sevelitte v. The Guardian Life Insurance Company of America | Date Filed: 04/15/2021 |
| Assigned to: District Judge Leo T. Sorokin | Date Terminated: 01/24/2024 |
| Demand: $1,600,000 | Jury Demand: Plaintiff |
| related Case: 1:23−cv−12471−LTS | Nature of Suit: 110 Insurance |
| Case in other court: Essex Superior Court, 2177cv00367B | Jurisdiction: Diversity |
| USCA − First Circuit, 22−01228 | |
| USCA − First Circuit, 24−01154 | |
| Cause: 28:1446 Petition for Removal | |

**Plaintiff**

| | | |
|---|---|---|
| **Renee Sevelitte** | represented by | **William Kevin Fitzgerald** |
| | | The Law Offices of W. Kevin Fitzgerald |
| | | 9 A Simmons Road |
| | | Nahant, MA 01908 |
| | | (617) 365−3477 |
| | | Email: kfitzgerald@JACOBWIRTH.COM |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **The Guardian Life Insurance Company of America** | represented by | **J. Christopher Collins** |
| *TERMINATED: 02/25/2022* | | Mirick O'Connell DeMallie & Lougee LLP |
| | | 100 Front Street |
| | | Worcester, MA 01608−1477 |
| | | (508) 791−8500 |
| | | Email: ccollins@mirickoconnell.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**ThirdParty Defendant**

| | | |
|---|---|---|
| **Robyn A. Caplis−Sevelitte** | represented by | **Joshua N. Garick** |
| *Personal Representative of the Estate of Joseph F. Sevelitte* | | Law Offices of Joshua N. Garick, P.C. |
| | | 34 Salem Street, Suite 202 |
| | | Reading, MA 01867 |
| | | (617) 600−7520 |
| | | Fax: (617) 600−7430 |
| | | Email: joshua@garicklaw.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Counter Defendant**

**Robyn A. Caplis–Sevelitte**
*Personal Representative of the Estate of*
*Joseph F. Sevelitte*

represented by **Joshua N. Garick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Robyn A. Caplis–Sevelitte**
*Personal Representative of the Estate of*
*Joseph F. Sevelitte*

represented by **Joshua N. Garick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mediator**

**Judge Donald L Cabell**
*TERMINATED: 01/04/2022*

V.

**Trustee**

**Santander Bank, N.A.**

**Counter Claimant**

**The Guardian Life Insurance**
**Company of America**
*TERMINATED: 02/25/2022*

represented by **J. Christopher Collins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Renee Sevelitte**

represented by **William Kevin Fitzgerald**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Renee Sevelitte**

represented by **William Kevin Fitzgerald**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Robyn A. Caplis–Sevelitte**
*Personal Representative of the Estate of*
*Joseph F. Sevelitte*

represented by **Joshua N. Garick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

Renee Sevelitte                                represented by  **William Kevin Fitzgerald**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Robyn A. Caplis–Sevelitte**                  represented by  **Joshua N. Garick**
*Personal Representative of the Estate of*                    (See above for address)
*Joseph F. Sevelitte*                                        *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Renee Sevelitte**                            represented by  **William Kevin Fitzgerald**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Robyn A. Caplis–Sevelitte**                  represented by  **Joshua N. Garick**
*Personal Representative of the Estate of*                    (See above for address)
*Joseph F. Sevelitte*                                        *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 04/15/2021 | 1 | NOTICE OF REMOVAL by The Guardian Life Insurance Company of America ( Filing fee: $ 402, receipt number 0101−8730407 Fee Status: Filing Fee paid) (Attachments: # 1 Exhibit A − State Court Complaint, # 2 Exhibit B − Summons with Acceptance, # 3 Exhibit C − State Court Docket, # 4 Civil Cover Sheet, # 5 Category Sheet)(Collins, J.) (Attachment 1 replaced on 1/12/2022) (Dore, Samantha). (Entered: 04/15/2021) |
| 04/15/2021 | 2 | CORPORATE DISCLOSURE STATEMENT by The Guardian Life Insurance Company of America. (Collins, J.) (Entered: 04/15/2021) |
| 04/15/2021 | 3 | ELECTRONIC NOTICE of Case Assignment. District Judge Leo T. Sorokin assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Donald L. Cabell. (Finn, Mary) (Entered: 04/15/2021) |
| 04/15/2021 | 4 | Certified Copy of Notice of Removal Provided to Defense Counsel by Email. (Kelly, Danielle) (Entered: 04/15/2021) |
| 04/26/2021 | 5 | ANSWER to Complaint (Notice of Removal) *and*, COUNTERCLAIM *for* |

| | | |
|---|---|---|
| | | *Interpleader* against Robyn A. Caplis–Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte by The Guardian Life Insurance Company of America. (Collins, J.) (Entered: 04/26/2021) |
| 04/27/2021 | 6 | STATE COURT Record Renee Sevelitte summons served on 4/7/2021, answer due 4/28/2021.. (Collins, J.) (Entered: 04/27/2021) |
| 04/28/2021 | 7 | Summons Issued as to Robyn A. Caplis–Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Simeone, Maria) (Entered: 04/28/2021) |
| 05/03/2021 | 8 | NOTICE of Appearance by Joshua N. Garick on behalf of Robyn A. Caplis–Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte (Garick, Joshua) (Entered: 05/03/2021) |
| 05/03/2021 | 9 | WAIVER OF SERVICE Returned Executed by Robyn A. Caplis–Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte. Robyn A. Caplis–Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte waiver sent on 4/26/2021, answer due 6/25/2021. (Garick, Joshua) (Entered: 05/03/2021) |
| 05/07/2021 | 10 | District Judge Leo T. Sorokin. ORDER REQUIRING COMPLIANCE WITH GENERAL PRACTICES OF THIS SESSION entered. (Simeone, Maria) (Entered: 05/07/2021) |
| 05/13/2021 | 11 | ANSWER to Guardian's Counterclaim by Renee Sevelitte. (Pacho, Arnold) (Entered: 05/13/2021) |
| 05/20/2021 | 12 | NOTICE of Scheduling Conference. A Scheduling Conference has been set for 6/9/2021 03:00 PM in Remote Proceeding : Boston before District Judge Leo T. Sorokin. (Attachments: # 1 scheduling order sample, # 2 standing order on summary judgment) This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible. Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violations of these prohibitions may result in sanctions, including removal of |

| | | court-issued media credentials, restricted entry to future hearings, or denial of entry to future hearings, and such other sanctions, including for contempt of court, as may be deemed appropriate or necessary by the court. |
| | | Scheduling Conference set for 6/9/2021 03:00 PM in Remote Proceeding : Boston before District Judge Leo T. Sorokin. (Simeone, Maria) (Entered: 05/20/2021) |
| 06/01/2021 | 13 | JOINT STATEMENT of counsel . (Collins, J.) (Entered: 06/01/2021) |
| 06/01/2021 | 14 | CERTIFICATION pursuant to Local Rule 16.1 *(d)(3)*. (Collins, J.) (Entered: 06/01/2021) |
| 06/03/2021 | 15 | District Judge Leo T. Sorokin. |
| | | ELECTRONIC ORDER entered. The Court ADOPTS the schedule proposed by the parties and, at the request of the parties, CANCELS the Rule 16 conference. The Court will hold a status conference on February 23, 2022 02:30 PM before District Judge Leo T. Sorokin. |
| | | re 13 Joint statement of counsel, ( Status Conference set for 2/23/2022 02:30 PM before District Judge Leo T. Sorokin.)(Simeone, Maria) (Entered: 06/03/2021) |
| 06/03/2021 | 16 | ELECTRONIC NOTICE Canceling 6/9/21 Scheduling Conference. (Simeone, Maria) (Entered: 06/03/2021) |
| 06/03/2021 | 17 | District Judge Leo T. Sorokin. |
| | | SCHEDULING ORDER entered. Initial Disclosures 7/25/21. Amended Pleadings due by 10/31/2021. Fact Discovery 2/15/2022. Trial experts by 3/15/22. Rebuttal by 4/15/22. All Experts by 5/15/22. Dispositive Motions 6/15/2022. ( Status Conference set for 2/23/2022 02:30 PM before District Judge Leo T. Sorokin.) |
| | | (Simeone, Maria) (Entered: 06/03/2021) |
| 06/11/2021 | 18 | CERTIFICATION pursuant to Local Rule 16.1 . (Garick, Joshua) (Entered: 06/11/2021) |
| 06/25/2021 | 19 | ANSWER to Counterclaim , CROSSCLAIM against Renee Sevelitte by Robyn A. Caplis-Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte. (Attachments: # 1 Ex. A: Letters of Authority, # 2 Ex. B: Divorce Agreement, # 3 Ex. C: Will, # 4 Ex. D: Santander Bank Records)(Garick, Joshua) (Entered: 06/25/2021) |
| 06/29/2021 | 20 | Amended CROSSCLAIM against Renee Sevelitte, filed by Robyn A. Caplis-Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte. (Attachments: # 1 Ex. A: Letters of Authority, # 2 Ex. B: Divorce Agreement, # 3 Ex. C: Joseph's Will, # 4 Ex. D: Santander Records)(Garick, Joshua) (Entered: 06/29/2021) |
| 06/29/2021 | 21 | MOTION for Temporary Restraining Order *and Attachment by Trustee Process* by Robyn A. Caplis-Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte. (Attachments: # 1 Ex. A: Proposed TRO, # 2 Ex. B: Proposed Trustee Process Findings, # 3 Ex. C: Proposed Trustee Writ, # 4 Ex. D: Misleading E-Mail, # 5 Ex. E: Affidavit of Joshua N. Garick, Esq.)(Garick, Joshua) (Entered: 06/29/2021) |
| 06/30/2021 | 23 | District Judge Leo T. Sorokin: ORDER entered. |

| | | TEMPORARY RESTRAINING ORDER. (Pacho, Arnold) (Entered: 06/30/2021) |
|---|---|---|
| 06/30/2021 | 24 | District Judge Leo T. Sorokin: ORDER entered. |
| | | Findings and Order of Approval of Ex Parte Attachment on Trustee Process. (Pacho, Arnold) (Entered: 06/30/2021) |
| 06/30/2021 | 25 | Summons to Trustee Issued as to Robyn A. Caplis−Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte. (Pacho, Arnold) (Entered: 06/30/2021) |
| 06/30/2021 | 26 | ELECTRONIC NOTICE Setting Hearing re 23 Temporary Restraining Order. |
| | | Hearing set for 7/7/2021 at 02:00 PM in Courtroom 13 before District Judge Leo T. Sorokin. (Pacho, Arnold) (Entered: 06/30/2021) |
| 06/30/2021 | 27 | MOTION to Deposit Funds *of Policy's Death Benefits* by The Guardian Life Insurance Company of America. (Attachments: # 1 Text of Proposed Order)(Collins, J.) (Entered: 06/30/2021) |
| 07/01/2021 | 28 | RESPONSE to Motion re 27 MOTION to Deposit Funds *of Policy's Death Benefits assenting to the requested relief* filed by Robyn A. Caplis−Sevelitte, Personal Representative of the Estate of Joseph F. Sevelitte. (Garick, Joshua) (Entered: 07/01/2021) |
| 07/01/2021 | 29 | District Judge Leo T. Sorokin: ENDORSED ORDER entered re 27 Motion to Deposit Policy's Death Benefits Funds. |
| | | ALLOWED. (Pacho, Arnold) (Entered: 07/01/2021) |
| 07/06/2021 | 30 | Objection re 21 MOTION for Temporary Restraining Order and Attachment by Trustee Process filed by Renee Sevelitte. (Attachments: # 1 Affidavit) (Pacho, Arnold) (Attachment 1 replaced on 1/12/2022) (Dore, Samantha). (Entered: 07/06/2021) |
| 07/06/2021 | 31 | REPLY to Response to 21 MOTION for Temporary Restraining Order *and Attachment by Trustee Process* filed by The Guardian Life Insurance Company of America. (Collins, J.) (Entered: 07/06/2021) |
| 07/07/2021 | 32 | SUMMONS to Trustee Returned Executed − Santander Bank, N.A. served on 6/30/2021, answer due 7/21/2021. (Garick, Joshua) Modified on 7/13/2021 to adjust party served (Currie, Haley). (Entered: 07/07/2021) |
| 07/07/2021 | 33 | Notice of Service of Process filed by Robyn A. Caplis−Sevelitte. Individual(s)/Entities served: Renee Sevelitte. (Garick, Joshua) (Entered: 07/07/2021) |
| 07/07/2021 | 34 | Proposed Document(s) submitted by Robyn A. Caplis−Sevelitte. Document received: Proposed Preliminary Injunction. (Garick, Joshua) (Entered: 07/07/2021) |
| 07/07/2021 | 35 | Electronic Clerk's Notes for proceedings held before District Judge Leo T. Sorokin: Hearing re TRO held on 7/7/2021; arguments given; Court Orders to be issued. (Court Reporter: Rachel Lopez at raeufp@gmail.com.)(Attorneys present: Collins, Fitzgerald, and Garick) (Lovett, Jarrett) (Entered: 07/07/2021) |
| 07/07/2021 | 36 | District Judge Leo T. Sorokin: ORDER entered. After a hearing with all parties, the Court issues the following Orders. |

| | | |
|---|---|---|
| | | 1. The TRO (Doc. No. 23 ) is DISSOLVED. |
| | | 2. Plaintiff Renee Sevelitte shall not withdraw or encumber the funds in her IRA that were removed from Joseph F. Sevelitte's IRA following his death. |
| | | 3. Prior to transferring any cash, assets, property, stocks, bonds or any other financial or property interests that Joseph F. Sevelite had or may have had on or before his death, Renee Sevelitte shall notify the Estate and counsel for the Estate in writing at least 14 days prior to taking any such action. |
| | | SO ORDERED. (Pacho, Arnold) (Entered: 07/07/2021) |
| 07/12/2021 | 37 | Cross Claim Defendant ANSWER to Crossclaim *Plaintiff, First CROSSCLAIM Answer* against Robyn A. Caplis−Sevelitte, First COUNTERCLAIM *Complaint* against Robyn A. Caplis−Sevelitte by Renee Sevelitte.(Fitzgerald, William) (Entered: 07/12/2021) |
| 07/13/2021 | 38 | ANSWER of Alleged Trustee by Santander Bank, N.A.. (Currie, Haley) (Entered: 07/13/2021) |
| 07/16/2021 | 41 | Payment Received: Civil Deposit of Policy's Death Benefits in the sum of $ 77,118.92, receipt number 1BST085615. (Currie, Haley) (Entered: 07/29/2021) |
| 07/19/2021 | 39 | Cross Claim Defendant ANSWER to Crossclaim *Plaintiff, Amended CROSSCLAIM Answer* against Robyn A. Caplis−Sevelitte by Renee Sevelitte.(Fitzgerald, William) (Entered: 07/19/2021) |
| 07/26/2021 | 40 | MOTION to Dismiss for Lack of Jurisdiction *Counterclaims Raised in ECF No. 39* by Robyn A. Caplis−Sevelitte(Personal Representative of the Estate of Joseph F. Sevelitte).(Garick, Joshua) (Entered: 07/26/2021) |
| 08/08/2021 | 42 | Opposition to 40 Motion to Dismiss by Renee Sevelitte. (Fitzgerald, William) Modified docket text on 8/9/2021 to properly characterize filing as an Opposition (Pacho, Arnold). (Entered: 08/08/2021) |
| 08/09/2021 | 43 | Opposition re 42 First MOTION to Dismiss for Lack of Jurisdiction *Objection to Motion to Dismiss (to the extent the Court construes any requested relief in the opposition to be a dispositive motion)* filed by Robyn A. Caplis−Sevelitte. (Garick, Joshua) (Entered: 08/09/2021) |
| 08/16/2021 | 44 | MOTION for Protective Order *and Order Quashing Subpoena to S. Strock and Company, Inc.* by Robyn A. Caplis−Sevelitte. (Attachments: # 1 Ex. A: S. Strock and Company, Inc. Subpoena)(Garick, Joshua) (Entered: 08/16/2021) |
| 08/16/2021 | 45 | Second MEMORANDUM in Opposition re 40 MOTION to Dismiss for Lack of Jurisdiction *Counterclaims Raised in ECF No. 39* filed by Renee Sevelitte. (Fitzgerald, William) (Entered: 08/16/2021) |
| 08/22/2021 | 46 | Opposition re 44 MOTION for Protective Order *and Order Quashing Subpoena to S. Strock and Company, Inc.* filed by Renee Sevelitte. (Fitzgerald, William) (Entered: 08/22/2021) |
| 08/23/2021 | 47 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 44 MOTION for Protective Order and Order Quashing Subpoena to S. Strock and Company, Inc. |

| | | |
|---|---|---|
| | | The subpoena that is the focus of the pending request for a protective order, Doc. No. 44, is STAYED pending the Court's review of the motion to quash (Doc. No. 44) and the possibly related motion to dismiss counterclaims (Doc. No. 40). The recipient of the subpoena need not respond until further order of this Court. (Dore, Samantha) (Entered: 08/23/2021) |
| 08/31/2021 | 48 | ELECTRONIC NOTICE Setting Hearing on Motion.<br><br>A Motion Hearing has been set for 9/2/2021 02:00 PM in person in Courtroom 13 before District Judge Leo T. Sorokin. re 44 MOTION for Protective Order *and Order Quashing Subpoena to S. Strock and Company, Inc.*, 40 MOTION to Dismiss for Lack of Jurisdiction *Counterclaims Raised in ECF No. 39*<br><br>Motion Hearing set for 9/2/2021 02:00 PM in Courtroom 13 before District Judge Leo T. Sorokin. (Simeone, Maria) (Entered: 08/31/2021) |
| 09/03/2021 | 49 | Electronic Clerk's Notes for proceedings held before District Judge Leo T. Sorokin.<br><br>Motion Hearing held on 9/3/2021. The court hears counsel on the jurisdictional question, the accounting of the assets and funds, and claims filed in probate court. The court discusses mediation with the parties. The parties will confer with their clients and report back via joint status report as to whether the parties would like to attend mediation, in which the case would be stayed with briefing on the jurisdictional question to come after if not settled or begin the briefing on the jurisdictional question.<br><br>re 44 MOTION for Protective Order *and Order Quashing Subpoena to S. Strock and Company, Inc.* filed by Robyn A. Caplis−Sevelitte, 40 MOTION to Dismiss for Lack of Jurisdiction *Counterclaims Raised in ECF No. 39* filed by Robyn A. Caplis−Sevelitte. (Court Reporter: Rachel Lopez at raeufp@gmail.com.) (Simeone, Maria) (Entered: 09/03/2021) |
| 09/03/2021 | 50 | MOTION for Judgment on the Pleadings by The Guardian Life Insurance Company of America.(Collins, J.) (Entered: 09/03/2021) |
| 09/03/2021 | 51 | MEMORANDUM in Support re 50 MOTION for Judgment on the Pleadings filed by The Guardian Life Insurance Company of America. (Collins, J.) (Entered: 09/03/2021) |
| 09/10/2021 | 52 | STATUS REPORT − *joint status report by Renee Sevelette and* by Robyn A. Caplis−Sevelitte(Personal Representative of the Estate of Joseph F. Sevelitte). (Garick, Joshua) (Entered: 09/10/2021) |
| 09/10/2021 | 53 | District Judge Leo T. Sorokin.<br><br>ELECTRONIC ORDER entered. This matter is STAYED and referred to mediation. Guardian Insurance Company is not expected to participate in the mediation as the issues to be mediated are between the other parties to this litigation (though it may do so voluntarily). Responses to the pending motion for judgment on the pleadings are also stayed as the Court. re 52 Status Report filed by Robyn A. Caplis−Sevelitte<br><br>(Simeone, Maria) (Entered: 09/10/2021) |
| 09/10/2021 | 54 | |

| | | District Judge Leo T. Sorokin: ORDER REFERRING CASE to Alternative Dispute Resolution entered.(Simeone, Maria) (Entered: 09/10/2021) |
|---|---|---|
| 09/13/2021 | 55 | Notice of assignment to ADR Provider. Judge Donald L Cabell appointed.(McLaughlin, Tracy) (Entered: 09/13/2021) |
| 09/13/2021 | 56 | MEMORANDUM OF LAW by Renee Sevelitte. (Fitzgerald, William) (Entered: 09/13/2021) |
| 09/14/2021 | 57 | MOTION for Leave to File *Reply to Plaintiff's Opposition to Guardian's Motion for Judgment on the Pleadings and Attorney's Fees* by The Guardian Life Insurance Company of America.(Collins, J.) (Entered: 09/14/2021) |
| 09/14/2021 | 58 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 57 MOTION for Leave to File Reply to Plaintiff's Opposition to Guardian's Motion for Judgment on the Pleadings and Attorney's Fees by The Guardian Life Insurance Company of America.

ALLOWED, but no further filings thereafter in light of the STAY.

Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include − Leave to file granted on (date of order)− in the caption of the document. (Dore, Samantha) (Entered: 09/14/2021) |
| 09/17/2021 | 59 | REPLY to Response to 57 MOTION for Leave to File *Reply to Plaintiff's Opposition to Guardian's Motion for Judgment on the Pleadings and Attorney's Fees*, 50 MOTION for Judgment on the Pleadings *Leave Granted 9−14−21* filed by The Guardian Life Insurance Company of America. (Collins, J.) (Entered: 09/17/2021) |
| 10/15/2021 | 60 | NOTICE of and ORDER Regarding Mediation.

Mediation set for 12/2/21 at 10:00 AM before Magistrate Judge Donald L. Cabell.

This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.

Attached is the Court's mediation order. The parties should review the order for full details before November 18, 2021.

The parties shall exchange settlement proposals by November 18, 2021 and submit confidential mediation statements (in the manner specified in the Court's mediation order) by no later than November 22, 2021. (Russo, Noreen) (Entered: 10/15/2021) |
| 10/26/2021 | 61 | MOTION to Continue Mediation by Robyn A. Caplis−Sevelitte.(Garick, Joshua) (Entered: 10/26/2021) |
| 10/27/2021 | 62 | MOTION to Continue *Objection* by Renee Sevelitte.(Fitzgerald, William) (Entered: 10/27/2021) |
| 11/17/2021 | 63 | Magistrate Judge Donald L. Cabell: ELECTRONIC ORDER entered granting 61 Motion to Continue; finding as moot 62 Motion to Continue. |

| | | |
|---|---|---|
| | | Alternative Dispute Resolution Hearing set for 1/11/2022 10:00 AM in Remote Proceeding : Boston before Magistrate Judge Donald L. Cabell.

All provisions of docket no. 60 NOTICE of and ORDER Regarding Mediation remain in effect as to this rescheduled date.

The parties should review the order for full details before December 28, 2021.

The parties shall exchange settlement proposals by December 28, 2021 and submit confidential mediation statements (in the manner specified in the Court's mediation order) by no later than December 31, 2021. (Russo, Noreen) (Entered: 11/17/2021) |
| 01/04/2022 | 64 | ELECTRONIC NOTICE Canceling Hearing. 1/11/22 ADR is canceled. (Russo, Noreen) (Entered: 01/04/2022) |
| 01/04/2022 | 65 | Electronic REPORT of Alternative Dispute Resolution Provider: Magistrate Judge Cabell reports that one of the parties did not want to proceed with Mediation. This case should be restored to your active trial list. (Russo, Noreen) (Entered: 01/04/2022) |
| 01/04/2022 | 66 | District Judge Leo T. Sorokin: ELECTRONIC ORDER LIFTING STAY entered. The response to 50 MOTION for Judgment on the Pleadings is due by 1/18/2022.(Simeone, Maria) (Entered: 01/04/2022) |
| 01/05/2022 | 67 | District Judge Leo T. Sorokin:

ELECTRONIC ORDER entered. The direction to file a response to the motion for judgment on the pleadings, See E Order Dates 1/4/2022, is VACATED as entered in error as the motion is fully ripe with an opposition and reply. re 66 Order Lifting Stay, Set Motion and R&R Deadlines/Hearings

(Simeone, Maria) (Entered: 01/05/2022) |
| 01/05/2022 | 68 | Letter/request (non–motion) from Joshua N. Garick, Esq., counsel for the Estate of Joseph F. Sevelitte *requesting leave to file a response to Guardian's motion for judgment on the pleadings (ECF No. 50)*. (Garick, Joshua) (Entered: 01/05/2022) |
| 01/05/2022 | 69 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered. re 68 Letter/request (non–motion), 50 MOTION for Judgment on the Pleadings

ALLOWED. The Estate may file its response to the motion for judgment on the pleadings by January 18, 2022. Any cross–motion the Estate wishes to file is due by that date. Responses to the cross–motion are due fourteen days after the filing of the motion with a reply, not to exceed five pages, due seven days after the filing of the opposition. (Responses due by 1/18/2022)(Dore, Samantha) (Entered: 01/05/2022) |
| 01/14/2022 | 70 | Cross MOTION for Judgment on the Pleadings *and limited opposition to Motion for Judgment on the Pleadings filed by the Guardian (ECF No. 50)* by Robyn A. Caplis–Sevelitte. (Attachments: # 1 Ex. A: Modification Agreement, # 2 Ex. B: Death Certificate, # 3 Ex. C: Aflac Decision (SJC))(Garick, Joshua) (Entered: 01/14/2022) |
| 01/20/2022 | 71 | First Opposition re 70 Cross MOTION for Judgment on the Pleadings *and limited opposition to Motion for Judgment on the Pleadings filed by the Guardian (ECF No. 50)* filed by Renee Sevelitte. (Fitzgerald, William) (Entered: 01/20/2022) |

| 01/21/2022 | 72 | REPLY to Response to 70 Cross MOTION for Judgment on the Pleadings *and limited opposition to Motion for Judgment on the Pleadings filed by the Guardian (ECF No. 50)* filed by The Guardian Life Insurance Company of America. (Attachments: # 1 Exhibit Ex. 1, # 2 Exhibit Ex. 2)(Collins, J.) (Entered: 01/21/2022) |
|---|---|---|
| 01/27/2022 | 73 | REPLY to Response to 70 Cross MOTION for Judgment on the Pleadings *and limited opposition to Motion for Judgment on the Pleadings filed by the Guardian (ECF No. 50)* filed by Robyn A. Caplis−Sevelitte(Personal Representative of the Estate of Joseph F. Sevelitte). (Garick, Joshua) (Entered: 01/27/2022) |
| 01/28/2022 | 74 | ELECTRONIC NOTICE of Hearing. A Status Conference has been set for 2/23/2022 04:00 PM in Courtroom 13 (In person only) before District Judge Leo T. Sorokin. (Simeone, Maria) (Entered: 01/28/2022) |
| 01/31/2022 | 75 | ELECTRONIC NOTICE Setting Hearing on Motion; A Motion Hearing has been set for 2/23/2022 04:00 PM in Courtroom 13 (In person only) before District Judge Leo T. Sorokin. re 50 MOTION for Judgment on the Pleadings , 44 MOTION for Protective Order *and Order Quashing Subpoena to S. Strock and Company, Inc.*, 70 Cross MOTION for Judgment on the Pleadings *and limited opposition to Motion for Judgment on the Pleadings filed by the Guardian (ECF No. 50)*, 40 MOTION to Dismiss for Lack of Jurisdiction *Counterclaims Raised in ECF No. 39* : Motion Hearing set for 2/23/2022 04:00 PM in Courtroom 13 (In person only) before District Judge Leo T. Sorokin. (Simeone, Maria) (Entered: 01/31/2022) |
| 02/23/2022 | 76 | Electronic Clerk's Notes for proceedings held before District Judge Leo T. Sorokin: Motion Hearing held on 2/23/2022 re 70 Cross MOTION for Judgment on the Pleadings filed by Robyn A. Caplis−Sevelitte, 44 MOTION for Protective Order *and Order Quashing Subpoena to S. Strock and Company, Inc.* filed by Robyn A. Caplis−Sevelitte, 40 MOTION to Dismiss for Lack of Jurisdiction *Counterclaims Raised in ECF No. 39* filed by Robyn A. Caplis−Sevelitte, 50 MOTION for Judgment on the Pleadings filed by The Guardian Life Insurance Company of America. Court heard argument on motions. Court took the matter under advisement. Plaintiff's counsel will send clerk the Westlaw citations as discussed in Court. (Court Reporter: Rachel Lopez at raeufp@gmail.com.)(Attorneys present: William Kevin Fitzgerald, J. Christopher Collins and Joshua Garick.) (Belmont, Kellyann) (Entered: 02/24/2022) |
| 02/25/2022 | 77 | District Judge Leo T. Sorokin:ORDER entered. <u>ORDER ON MOTION TO DISMISS AND MOTION FOR PROTECTIVE ORDER (DOC. NOS. 40, 44, 50, 70)</u> ALLOWS Guardian's Motion for Judgment on the Pleadings (Doc. No. 50 ). ALLOWS Robyn's Motion to Dismiss (Doc. No. 40 ) and DISMISSES WITHOUT PREJUDICE Renee's crossclaims against Robyn set forth in Doc. No. 39. DENIES AS MOOT Robyn's Motion for a Protective Order and Order to Quash (Doc.No. 44 ). ALLOWS Robyn's Motion for Judgment on the Pleadings (Doc. No. 70 ) insofar as it |

| | | requests judgment in her favor on the interpleader action. The Motion is DENIED insofar as it seeks judgment in favor of the Estate on its crossclaims (Doc. No. 70). (Dore, Samantha) (Entered: 02/25/2022) |
|---|---|---|
| 02/25/2022 | 78 | District Judge Leo T. Sorokin: ORDER entered. JUDGMENT. (Dore, Samantha) (Entered: 02/25/2022) |
| 03/15/2022 | 79 | NOTICE OF APPEAL as to 78 Judgment by Renee Sevelitte Filing fee: $ 505 receipt number AMADC−9225929 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 4/4/2022. (Dore, Samantha) (Entered: 03/28/2022)** |
| 03/28/2022 | 80 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 79 Notice of Appeal. (Paine, Matthew) (Entered: 03/28/2022) |
| 03/31/2022 | 81 | USCA Case Number 22−1228 for 79 Notice of Appeal, filed by Renee Sevelitte. (Paine, Matthew) (Entered: 03/31/2022) |
| 12/07/2022 | 82 | OPINION of USCA as to 79 Notice of Appeal, filed by Renee Sevelitte. (Paine, Matthew) (Entered: 12/07/2022) |
| 12/07/2022 | 83 | USCA Judgment as to 79 Notice of Appeal, filed by Renee Sevelitte (Paine, Matthew)  **AFFIRMED IN PART, VACATED IN PART, AND REMANDED**  (Entered: 12/07/2022) |
| 12/29/2022 | 84 | MANDATE of USCA as to 79 Notice of Appeal, filed by Renee Sevelitte. Appeal 79 Terminated (Paine, Matthew) (Entered: 12/30/2022) |
| 01/03/2023 | 85 | NOTICE of Scheduling Conference: Scheduling Conference set for 1/18/2023 12:00 PM in Courtroom 13 (Remote only) before District Judge Leo T. Sorokin.  This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.  Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.  For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.  (Attachments: # 1 Scheduling Order Sample, # 2 Standing Order on Summary Judgment)(Belmont, Kellyann) (Entered: 01/03/2023) |

| 01/04/2023 | 86 | Case Reopened Mandated by 1st Circuit [Dkt. 84]. (Deslauriers, Timothy) (Entered: 01/04/2023) |
|---|---|---|
| 01/17/2023 | 87 | JOINT STATEMENT re scheduling conference . (Garick, Joshua) (Entered: 01/17/2023) |
| 01/17/2023 | 88 | CERTIFICATION pursuant to Local Rule 16.1 . (Garick, Joshua) (Entered: 01/17/2023) |
| 01/17/2023 | 89 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered. The Court ADOPTS the schedule proposed by the parties and, at the request of the parties, CANCELS the Rule 16 conference. The Court will hold a status conference on 8/16/2023 11:00 AM in Courtroom 13 by video. (Belmont, Kellyann) (Entered: 01/17/2023) |
| 01/17/2023 | 90 | ELECTRONIC NOTICE Cancelling Hearing. The scheduling conference set for 1/18/2023 is cancelled. (Belmont, Kellyann) (Entered: 01/17/2023) |
| 01/17/2023 | 91 | District Judge Leo T. Sorokin: ORDER entered. SCHEDULING ORDER (Belmont, Kellyann) (Entered: 01/17/2023) |
| 01/22/2023 | 92 | First MOTION for Judgment on the Pleadings by Renee Sevelitte.(Fitzgerald, William) (Entered: 01/22/2023) |
| 01/24/2023 | 93 | Opposition re 92 First MOTION for Judgment on the Pleadings filed by Robyn A. Caplis–Sevelitte. (Garick, Joshua) (Entered: 01/24/2023) |
| 01/30/2023 | 94 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 92 First MOTION for Judgment on the Pleadings by Renee Sevelitte. <br><br> The Motion for Judgment on the Pleadings (#92) is DENIED. (Dore, Samantha) Modified on 1/30/2023 (Dore, Samantha). (Entered: 01/30/2023) |
| 02/12/2023 | 95 | MOTION for Summary Judgment by Renee Sevelitte.(Fitzgerald, William) (Entered: 02/12/2023) |
| 02/17/2023 | 96 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 95 Motion for Summary Judgment. <br><br> This Court resolved this case on Rule 12 motions. Doc. No. 77. The First Circuit Court of Appeals reversed insofar as the undersigned resolved at the Rule 12 stage the disposition of the proceeds between Renee Sevelitte and the Estate. Doc. No. 82. After remand, this Court established a schedule to govern discovery in this matter. Doc. No. 91. Plaintiff Renee Sevelitte promptly filed a Motion for Judgment on the Pleadings, Doc. No. 92, which the Court denied, Doc. No. 94, because in the Court&rsquo;s view this matter, in light of the ruling of the Circuit, requires discovery and then resolution either on a summary judgment motion or at trial. Plaintiff has now filed a Motion for Summary Judgment. Doc. No. 95. This Motion is DENIED WITHOUT PREJUDICE because it bears no certificate of conferral as required by Local Rule 7.1(a)(2). The practice of this session is to permit one dispositive motion per side after the resolution of Rule 12 motions. Plaintiff, after conferral, may refile her Motion for Summary Judgment now without waiting for discovery. However, if Plaintiff so proceeds, she is cautioned that that will be the only motion for summary judgment the Court will permit Plaintiff to file unless Plaintiff can establish good cause as to why this case is the unusual case warranting |

| | | multiple dispositive motions. Alternatively, Plaintiff can wait until some, or all, of the discovery is concluded and then file a motion for summary judgment. However, Plaintiff may not file two such motions absent the good cause showing noted above. Any motion under Rule 56 shall comply with the both the Federal Rules of Civil Procedure and the Local Rules including, _inter alia_, by supporting all factual allegations with admissible evidence. (Dore, Samantha) (Entered: 02/17/2023) |
|---|---|---|
| 02/22/2023 | 97 | MOTION for Judgment on Partial Findings _in accordance with the ruling of the Appellate Court_ by Renee Sevelitte.(Fitzgerald, William) (Entered: 02/22/2023) |
| 02/23/2023 | 98 | MOTION to Compel by Robyn A. Caplis−Sevelitte.(Garick, Joshua) (Entered: 02/23/2023) |
| 02/23/2023 | 99 | MOTION to Strike 97 MOTION for Judgment on Partial Findings _in accordance with the ruling of the Appellate Court_ by Robyn A. Caplis−Sevelitte.(Garick, Joshua) (Entered: 02/23/2023) |
| 02/23/2023 | 100 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered re 97 MOTION for Judgment on Partial Findings in accordance with the ruling of the Appellate Court by Renee Sevelitte. After the Court's last electronic order resolving Plaintiff Renee Sevelitte's last dispositive motion and ruling that each side could file one further dispositive motion (Doc. No. 96 ), Plaintiff promptly filed a motion for "judgment" (Doc. No. 97 ) that appears to be a motion for summary judgment under Rule 56, but also appears to try to fit within Rule 12(c). In either case, in the Court's view, this Motion, if resolved on the merits, would be Plaintiff's one and only dispositive motion in this case between now and trial. In the absence of good cause as explained in the Court's prior electronic order, Plaintiff would not be permitted to file another such motion. The current pending Motion (Doc. No. 97 ) is DENIED WITHOUT PREJUDICE for violation of Local Rule 5.1(a)(2), which requires the double spacing of all documents filed in this court (except discovery requests and responses). Plaintiff's memo is single spaced. Plaintiff may, of course, refile the Motion if she wishes provided it conforms to the Local Rules. Plaintiff is reminded that any further dispositive motion, without regard to the Rule of Civil Procedure under which it seeks relief (or no such rule), will be the one dispositive motion Plaintiff may file between now and trial unless the Court subsequently finds good cause.(Belmont, Kellyann) (Entered: 02/23/2023) |
| 02/26/2023 | 101 | MOTION for Judgment on Partial Findings by Renee Sevelitte.(Fitzgerald, William) (Entered: 02/26/2023) |
| 02/28/2023 | 102 | MOTION to Strike 101 MOTION for Judgment on Partial Findings _(renewed motion)_ by Robyn A. Caplis−Sevelitte.(Garick, Joshua) (Entered: 02/28/2023) |
| 02/28/2023 | 103 | Certificate of Compliance with Federal Rule of Civil Procedure filed by Renee Sevelitte. (Fitzgerald, William) Modified on 3/3/2023: Updated docket text. (Dore, Samantha). (Entered: 02/28/2023) |
| 03/03/2023 | 104 | District Judge Leo T. Sorokin: ORDER entered. ORDER ON MOTION TO ENTER JUDGMENT PURSUANT TO THE RULING OF THE APPELLATE COURT (DOC. NO. 101 ), MOTION TO STRIKE (DOC. NO. 99 ), AND RENEWED MOTION TO STRIKE (DOC. NO. 102 ) (Dore, Samantha) (Entered: 03/03/2023) |
| 03/06/2023 | 105 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 98 Motion to Compel |

| | | The Motion to Compel filed by Robyn Caplis−Sevelitte, Doc. No. 98, is DENIED AS MOOT in light of the notice of compliance filed by counsel for Renee Sevelitte, Doc. No. 103. (Dore, Samantha) (Entered: 03/06/2023) |
|---|---|---|
| 05/21/2023 | 106 | Document disclosure by Renee Sevelitte.(Fitzgerald, William) (Entered: 05/21/2023) |
| 05/21/2023 | 107 | Document disclosure by Renee Sevelitte.(Fitzgerald, William) (Entered: 05/21/2023) |
| 06/11/2023 | 108 | MOTION for Summary Judgment *Under Rule 56* by Renee Sevelitte.(Fitzgerald, William) (Entered: 06/11/2023) |
| 06/20/2023 | 109 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered. No opposition or other response to Renee Sevelitte's most recent Motion for Summary Judgment (Doc. No. 108 ) is required unless and until such a filing is invited by the Court after it reviews the motion. (Dore, Samantha) (Entered: 06/20/2023) |
| 06/21/2023 | 110 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered. Plaintiff Renee Sevelitte&rsquo;s Motion for Summary Judgment (Doc. No. 108 ) is DENIED. The Court has rejected four other dispositive motions filed by the plaintiff for reasons it has explained in prior orders. This time, the plaintiff has again failed to comply with this Court&rsquo;s Local Rule requiring the double−spacing of all motion papers, see Doc. No. 100 (denying a prior dispositive motion without prejudice for failure to adhere to the same rule), and she has not shown good cause for allowing her a fifth dispositive motion, see Doc. No. 104 at 4 (denying her last dispositive motion &ldquo;on the merits&rdquo; and admonishing that she would not be permitted to file another such motion &ldquo;absent a showing of good cause&rdquo;). (Dore, Samantha) (Entered: 06/21/2023) |
| 06/25/2023 | 111 | MOTION *to Quash* by Renee Sevelitte.(Fitzgerald, William) (Additional attachment(s) added on 6/26/2023: # 1 Exhibit A) (Dore, Samantha). (Main Document 111 replaced on 6/26/2023) (Dore, Samantha). (Entered: 06/25/2023) |
| 06/26/2023 | 112 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered. re 111 Motion to Quash. The Motion to Quash (#111) is DENIED. First, Counsel has, again, violated the Local Rules. This Motion does not bear a certificate of conferral as required. For that reason, the Motion is DENIED WITHOUT PREJUDICE. Second, the Motion is DENIED WITH PREJUDICE on the merits. The Motion proceeds on the assumptions that either (a) no discovery whatsoever is warranted in this case from the Plaintiff or (b) that the notice designating topics constitutes a binding admission sufficient to establish both that no discovery is necessary from Plaintiff and that Plaintiff prevails. Not so. As the Court has repeatedly explained since the return of this case from the Court of Appeals, the parties will proceed with reasonable discovery followed by resolution of this matter consistent with the ruling of the Court of Appeals and in accordance with the Rules of Civil Procedure as well as the orders of this Court. (Dore, Samantha) (Entered: 06/26/2023) |
| 06/26/2023 | 113 | Opposition re 111 MOTION *to Quash* and cross−motion for sanctions filed by Robyn A. Caplis−Sevelitte. (Garick, Joshua) (Entered: 06/26/2023) |
| 07/17/2023 | 114 | |

| | | ELECTRONIC NOTICE OF RESCHEDULING: The Status Conference previously set for 8/16/2023 is rescheduled for 8/21/2023 03:15 PM in Courtroom 13 (Remote only) before District Judge Leo T. Sorokin.<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>(Belmont, Kellyann) (Entered: 07/17/2023) |
|---|---|---|
| 08/02/2023 | 115 | Joint MOTION to Continue status conference by Robyn A. Caplis−Sevelitte(Personal Representative of the Estate of Joseph F. Sevelitte).(Garick, Joshua) (Entered: 08/02/2023) |
| 08/02/2023 | 116 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered re 115 Joint MOTION to Continue status conference by Robyn A. Caplis−Sevelitte(Personal Representative of the Estate of Joseph F. Sevelitte).<br>ALLOWED. Status Conference reset for 8/21/2023 10:30 AM in Courtroom 13 (Remote only) before District Judge Leo T. Sorokin. **Note: change is to time only!** (Belmont, Kellyann) (Entered: 08/02/2023) |
| 08/22/2023 | 117 | Electronic Clerk's Notes for proceedings held before District Judge Leo T. Sorokin: Status Conference held on 8/22/2023.<br><br>The court hears the parties as to the status of their case. Fact discovery is complete, the plaintiff will not be using any experts while the ThirdParty Defendant plans on having a expert. Expert disclosures shall be done by 9/15/2023. Summary judgement motions shall be filed by 10/16/2023, responses due by 11/16/2023 and replies by 11/30/2023.<br><br>(Motions due by 10/16/2023).(Court Reporter: Debra Joyce at joycedebra@gmail.com.)(Attorneys present: Fitzgerald and Garick) (Dore, Samantha) (Entered: 08/22/2023) |
| 10/15/2023 | 118 | First MOTION for Judgment on the Pleadings by Renee Sevelitte.(Fitzgerald, William) (Entered: 10/15/2023) |
| 10/16/2023 | 119 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 118 First MOTION for Judgment on the Pleadings.<br><br>On October 15, 2023, Renee Sevelitte filed what she styled as a &ldquo;Motion Under Rule 56.&rdquo; Doc. No. 118 at 3. This Motion is DENIED for at least all of the following reasons before the Court ever reaches the merits of the Motion. First, the Local Rules require counsel to confer with opposing counsel before filing any |

| | | motion and to include on every motion a certificate of conferral. This Motion contains no such certificate of conferral. This is not the first time counsel has disregarded this basic rule. On June 26, 2023, the Court denied a discovery motion filed by counsel because it, as with the present motion, did &ldquo;not bear a certificate of conferral as required.&rdquo; Doc. No. 112. Second, on January 30, 2023, the Court denied Sevelitte&rsquo;s first post–appeal dispositive motion without comment. On February 17, 2023, the Court denied Sevelitte&rsquo;s second post–appeal dispositive motion explaining that the &ldquo;practice of this session is to permit one dispositive motion per side after the resolution of Rule 12 motions. Plaintiff, after conferral [as with this motion, counsel for the Plaintiff disregarded the conferral requirement], may refile her Motion for Summary Judgment now without waiting for discovery. However, if Plaintiff so proceeds, she is cautioned that that will be the only motion for summary judgment the Court will permit Plaintiff to file&rdquo; absent good cause as to why this case is the &ldquo;unusual case warranting multiple dispositive motions.&rdquo; Doc. No. 96. Five days later, Sevelitte filed another dispositive motion. The Court declined to resolve the motion on the merits because it failed to conform to the most basic filing requirements of this Court and instead both denied the motion without prejudice and reminded counsel of the one and only dispositive motion limitation. Doc. No. 100. Several days later, Sevelitte filed another dispositive motion. Doc. No. 101. The Court denied that motion on the merits. Doc. No. 104. In so doing, the Court ruled that this motion was Sevelitte&rsquo;s one and only post–appeal dispositive motion absent establishing the good cause described above. Id. at 4. On June 11, 2023, in disregard of the Court&rsquo;s ruling and without seeking permission or attempting to show good cause, Sevelitte filed another dispositive motion. The Court denied this motion for the foregoing reasons as well as its failure to comply with the Court&rsquo;s formatting rules requiring the double spacing of pleadings. Doc. No. 110. Now, Sevelitte files still another dispositive motion. Nowhere in the present motion does Sevelitte explain why this is the unusual case that warrants a second dispositive motion at this stage of the proceedings. Counsel does say that the facts are undisputed and summary judgment offers an efficient resolution of the case. But this fails to address why good cause exists to permit another dispositive motion when (1) the Court made plain repeatedly to counsel that Sevelitte could file only one dispositive motion, and (2) Sevelitte has still tried to file multiple dispositive motions since the case was remanded by the Court of Appeals in disregard of the limitation of one imposed by the Court. Accordingly, for the foregoing reasons, the Motion (#118) is DENIED. Nothing in this Order precludes Sevelitte from advancing her arguments for judgment (1) at trial or (2) in opposition to any dispositive motion filed by the Defendant. (Dore, Samantha) (Entered: 10/16/2023) |
| 10/16/2023 | 120 | Assented to MOTION for Extension of Time to Wednesday, October 18, 2023 to File *Motion for Summary Judgment* by Robyn A. Caplis–Sevelitte(Personal Representative of the Estate of Joseph F. Sevelitte).(Garick, Joshua) (Entered: 10/16/2023) |
| 10/16/2023 | 121 | First MOTION for Extension of Time to October 18,2023 to file dispositive motion by Renee Sevelitte.(Fitzgerald, William) (Main Document 121 replaced on 10/17/2023) (Dore, Samantha). (Entered: 10/16/2023) |
| 10/17/2023 | 122 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered; re 120 Assented to MOTION for Extension of Time to Wednesday, October 18, 2023 to File Motion for Summary Judgment and 121 First MOTION for Extension of Time to October 18,2023 to file dispositive motion. |

| | | Both Motions for an extension of two days are ALLOWED. To clarify though nothing in the Court&rsquo;s ruling on October 16, 2023, or at any other time, &ldquo;requested&rdquo; the filing of a dispositive motion by Renee Sevelitte or any other party. (Dore, Samantha) (Entered: 10/17/2023) |
|---|---|---|
| 10/17/2023 | 123 | MOTION for Summary Judgment by Renee Sevelitte.(Fitzgerald, William) (Main Document 123 replaced on 10/19/2023) (Dore, Samantha). Modified on 10/19/2023: Removed blank pages from docoument. (Dore, Samantha). (Entered: 10/17/2023) |
| 10/18/2023 | 124 | MOTION for Summary Judgment by Robyn A. Caplis−Sevelitte.(Garick, Joshua) (Entered: 10/18/2023) |
| 10/18/2023 | 125 | MEMORANDUM in Support re 124 MOTION for Summary Judgment filed by Robyn A. Caplis−Sevelitte. (Garick, Joshua) (Entered: 10/18/2023) |
| 10/18/2023 | 126 | Statement of Material Facts L.R. 56.1 re 124 MOTION for Summary Judgment filed by Robyn A. Caplis−Sevelitte. (Attachments: # 1 Ex. 1: Renee's Answers to Interrogatories, # 2 Ex. 2: Divorce Agreement, # 3 Ex. 3: Joint Petition for Divorce, # 4 Ex. 4: Affidavit of Valerie Ross, # 5 Ex. 5: Expert Report, Susan DeMatteo, # 6 Ex. 6: Judgment of Divorce Nisi, # 7 Ex. 7: Death Certificate, # 8 Ex. 8: Will, # 9 Ex. 9: Trust, # 10 Ex. 10: Letters of Authority, # 11 Ex. 11: Guardian Policy, # 12 Ex. 12: Renee's Claim, # 13 Ex. 13: Renee's Denial, # 14 Ex. 14: Estate's Claim, # 15 Ex. 15: Modification Agreement, # 16 Ex. 16: Renee's 6.7.2013 Financial Statement, # 17 Ex. 17: Renee's 10.2.2015 Financial Statement, # 18 Ex. 18: 1.24.2.13 Draft of Exhibit G, # 19 Ex. 19: 3.7.2.13 Draft of Exhibit G, # 20 Ex. 20: Renee Sevelitte Deposition Transcript, # 21 Ex. 21: 4.25.2.13 Draft of Exhibit G, # 22 Ex. 22: Renee's Document Production)(Garick, Joshua) (Entered: 10/18/2023) |
| 10/19/2023 | 127 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered: re 123 Motion for Summary Judgment. Renee Sevelitte has filed still another dispositive motion (Doc. No. 123). This Motion requests the Court permit the filing and consideration of the Motion despite the Court&rsquo;s prior rulings because this will promote &ldquo;efficiency&rdquo; and the &ldquo;failure of Counsel to adequately heed the Court&rsquo;s past instructions should not cause Plaintiff to be denied justice.&rdquo; This request for leave is DENIED. The Court repeatedly explained and warned counsel in unequivocal language over a substantial period of time. Sevelitte has not established good cause. There is prejudice to the opposing party as they have been forced, to some extent, to respond to repeated motions as well as prejudice to the Court which has been required to adjudicate repeated improper motions. Nothing prevents Renee Sevelitte from advancing her reasons for summary judgment both (1) as an opposition to the dispositive motion filed by Robyn Caplis−Sevelitte and (2) at trial. In this way, Renee Sevelitte&rsquo;s substantive rights are protected. Accordingly, the Motion for Summary Judgment (Doc. No. 123) is DENIED. (Dore, Samantha) Modified on 10/19/2023 (Dore, Samantha). (Entered: 10/19/2023) |
| 11/01/2023 | 128 | Opposition re 124 MOTION for Summary Judgment filed by Renee Sevelitte. (Fitzgerald, William) (Entered: 11/01/2023) |
| 11/08/2023 | 129 | REPLY to Response to 124 MOTION for Summary Judgment filed by Robyn A. Caplis−Sevelitte. (Garick, Joshua) (Entered: 11/08/2023) |
| 11/12/2023 | 130 | Second RESPONSE to Motion re 124 MOTION for Summary Judgment filed by Renee Sevelitte. (Fitzgerald, William) (Entered: 11/12/2023) |

| 01/24/2024 | 131 | District Judge Leo T. Sorokin: ORDER entered. ORDER ON THE ESTATE'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 124 ) (Dore, Samantha) (Entered: 01/24/2024) |
|---|---|---|
| 01/24/2024 | 132 | District Judge Leo T. Sorokin: ORDER entered. JUDGMENT (Dore, Samantha) (Entered: 01/24/2024) |
| 02/09/2024 | 133 | NOTICE OF APPEAL to the Federal Circuit by Renee Sevelitte Filing fee: $ 605, receipt number AMADC−10263235 Fee Status: Filing Fee paid. US District Court Clerk to deliver official record to Court of Appeals by 2/29/2024. (Fitzgerald, William) (Entered: 02/09/2024) |
| 02/09/2024 | 134 | NOTICE OF APPEAL as to 131 Order on Motion for Summary Judgment, 132 Judgment by Renee Sevelitte. Filing fee: $ 605, receipt number AMADC−10263235 Fee Status: Filing Fee paid NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 2/29/2024. (Paine, Matthew) (Entered: 02/09/2024)** |
| 02/09/2024 | 135 | Notice of correction to docket made by Court staff. Correction: Docket Entry 133 Notice Of Appeal Corrected Because: The Notice of Appeal Was Filed Under the Wrong Appellate Event By Counsel Fitzgerald in Violation of Court Rules and CM/ECF Administrative Procedures. Please See ECF No. 134 for the Corrected Notice of Appeal. (Paine, Matthew) (Entered: 02/09/2024) |
| 02/09/2024 | 136 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 134 Notice of Appeal. (Paine, Matthew) (Entered: 02/09/2024) |
| 02/12/2024 | 137 | USCA Case Number 24−1154 for 134 Notice of Appeal, filed by Renee Sevelitte. (Paine, Matthew) (Entered: 02/12/2024) |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENEE SEVELITTE,<br>            Plaintiff and Crossclaim Defendant,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA,<br>            Defendant,<br><br>v.<br><br>ROBYN A. CAPLIS-SEVELITTE, AS<br>PERSONAL REPRESENTATIVE OF THE<br>ESTATE OF JOSEPH F. SEVELITTE,<br>            Third-Party Defendant and<br>            Crossclaim Plaintiff. | Civil No. 21-10630-LTS |

ORDER ON THE ESTATE'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 124)

January 24, 2024

SOROKIN, J.

Since the death of Joseph F. Sevelitte ("Mr. Sevelitte"), litigation among his surviving family members—present and former—has abounded. At least seven state and federal courts have been drawn into the fray in eleven different legal actions.[1] The matter presently before this Court concerns competing claims to the death benefit provided by an insurance policy Mr. Sevelitte owned. Discovery is complete, and a motion by Mr. Sevelitte's estate ("the Estate") for

---

[1] Besides this Court and the United States Court of Appeals for the First Circuit ("the First Circuit"), which resolved an appeal of an earlier Order in this case, the record includes references to matters filed in the Essex and Middlesex County Superior Courts, the Middlesex County Probate and Family Court, the Eastern Division of the Massachusetts Housing Court, and the Somerville District Court. See Doc. No. 126 ¶ 1.

summary judgment is now ripe. The Court resolves the Estate's motion on the papers and ALLOWS it in its entirety for the reasons explained below.

## I.   BACKGROUND

This case traveled an unusual path before arriving at the summary-judgment stage. Because context matters, both generally and in understanding the specific disputes now presented to the Court, the following sections will summarize the procedural history in this case before laying out the undisputed facts material to resolving the Estate's motion.

### A.   The Pleadings

Renee Sevelitte ("Renee") is Mr. Sevelitte's ex-wife. She initiated this action by filing a "Verified Complaint and Request for Jury Trial" against Guardian Life Insurance Company of America ("Guardian") in state court. Doc. No. 1-1.[2] Renee's initial pleading was prepared by attorney W. Kevin Fitzgerald and asserted claims for breach of contract, fraudulent misrepresentation, specific performance, and a violation of Chapter 93A of the Massachusetts General Laws. Id. at 3-6. In support of her claims, Renee advanced the following factual allegations.

Renee married Mr. Sevelitte in 1986. Id. at 36. Ten years later, Mr. Sevelitte acquired a life-insurance policy ("the Policy") from Berkshire Life Insurance Company, pursuant to which "the beneficiary of the policy" would receive $75,000 "immediately upon the death of" Mr. Sevelitte. Id. at 2 (¶ 3). Mr. Sevelitte identified Renee as the primary beneficiary and named no contingent beneficiaries. Id. at 31. The terms of the Policy specified that the proceeds would be directed to the Estate if Mr. Sevelitte died without a living primary or contingent beneficiary. Id.

---

[2] Citations to "Doc. No. __" reference documents appearing on the court's electronic docket, and pincites are to the page numbers in the ECF header.

at 20. At some point, Guardian "assumed all rights and obligations of Berkshire," including with respect to the Policy. Id. at 2 (¶ 5).

Mr. Sevelitte and Renee divorced in 2013. See id. at 63. They negotiated a binding written agreement ("the Divorce Agreement") in which they "settle[d] all matters relating to the interests and obligations of each party," including the equitable distribution of their property. Id. at 36, 52. Renee alleged in her Verified Complaint that the Policy "was part of" the Divorce Agreement, id. at 2 (¶ 4), and was therefore beyond the reach of the Massachusetts Uniform Probate Code and its section providing for revocation of a former spouse's beneficiary status upon divorce. Id. at 2-3 (¶¶ 4, 12). More specifically, she alleged that the terms of the Divorce Agreement: linked the Policy to Mr. Sevelitte's alimony obligation, id. at 3 (¶ 15); "transferred the ownership of the [Policy] to Renee," id. at 3-4 (¶¶ 19, 26); and referred to the Policy using the term "Whole Life Insurance Policy" because the Policy was the only "whole life" insurance Renee and Mr. Sevelitte had, id. at 4 (¶¶ 21-22).[3]

On December 23, 2020, Mr. Sevelitte died. Id. at 2 (¶ 7). Because he had not amended the Policy after the divorce, the original designation of Renee as primary beneficiary still appeared in the Policy at the time of his death. See id. at 2 (¶ 8). Renee alleged she promptly submitted a claim to Guardian for the death benefit provided by the Policy, along with copies of Mr. Sevelitte's death certificate and the Divorce Agreement. Id. at 2-3 (¶¶ 7, 9, 12). Guardian refused to pay her, invoking Massachusetts's revocation-upon-divorce statute. Id. (¶¶ 10-11). When a demand letter pursuant to Chapter 93A did not alter Guardian's position, Renee filed this lawsuit on March 31, 2021. She sought compensatory and punitive damages "and relief for the

---

[3] The undisputed evidence presented at summary judgment and recounted in Section I(D), infra, reveals that the first two allegations listed here are inaccurate. That is, the Policy was not linked to any alimony obligation, and ownership was not transferred to Renee.

3

intentional infliction of emotional, mental, physical and financial harm," requesting "in aggregate an award of One Million Six Hundred thousand dollars . . . plus reasonable attorneys' fees," and further urging the Court to order "that Guardian be barred from selling insurance of any type in the Commonwealth of Massachusetts until the Court feels that Guardian abides by the terms of its Contracts." Id. at 5-6.

Guardian removed the action to this Court on April 15, 2021, invoking 28 U.S.C. § 1332. Doc. No. 1 at 3. Thereafter, Guardian filed an answer that included a counterclaim for interpleader. Doc. No. 5. Via the counterclaim, Guardian asserted that the Divorce Agreement did not unambiguously define "the post-divorce obligations" of Mr. Sevelitte "with respect to the Policy," leading Guardian to conclude it could not pay the death benefit to Renee "without subjecting [itself] to a duplicate claim by the Estate." Id. at 7 (¶¶ 12, 15). Pursuant to Federal Rule of Civil Procedure 22, Guardian named Robyn A. Caplis-Sevelitte ("Robyn"), the personal representative of the Estate, as a third-party defendant based on the expectation that the Estate would pursue a competing claim to the death benefit.[4] Id. at 5-6 (¶¶ 3-4). The Estate answered Guardian's third-party claim and asserted crossclaims against Renee, which led Renee to assert counterclaims against the Estate. Doc. Nos. 19, 20, 39.

Meanwhile, the Court permitted Guardian to deposit the insurance proceeds at issue with the Clerk. Doc. Nos. 27, 29, 41. A flurry of motions followed, including Rule 12 motions by Guardian and the Estate. Doc. Nos. 50, 70. After briefing was complete, and having heard the parties at a motion hearing, Doc. No. 76, this Court entered an Order on February 25, 2022, resolving the various pending requests. Doc. No. 77. As relevant here, the Court allowed

---

[4] Because Robyn is not participating in this action in her individual capacity, the Court will refer to her by name only when describing the underlying facts. When addressing the pending motion and the competing claims or arguments, the Court will generally refer to the Estate.

648

Guardian's motion for judgment on the pleadings, discharged it from this action, granted it attorney's fees and costs, and enjoined the other parties from pursuing any further litigation against it related to the death benefit provided by the Policy. Id. at 15. The Court also dismissed Renee's counterclaims against the Estate, as well as the Estate's crossclaims against Renee related to matters other than the Policy. Id. at 16. Finally, the Court allowed the Estate's motion for judgment on the pleadings and directed the Clerk to distribute to the Estate the funds that Guardian had deposited with the Court. Id.

    B.    <u>The Appeal</u>

Renee appealed, challenging each aspect of this Court's decision that was adverse to her. See Doc. No. 79; <u>see also</u> Sevelitte v. Guardian Life Ins. Co. of Am., 55 F.4th 71, 75 (1st Cir. 2022). On December 7, 2022, the First Circuit issued a decision affirming some of this Court's rulings and vacating others, remanding for further proceedings as to the latter category of issues. See <u>Sevelitte</u>, 55 F.4th at 86 (enumerating six aspects of this Court's decision that were affirmed, and three that were vacated). Because a series of post-remand submissions by Renee have evidenced a persistent misapprehension about the effect of the First Circuit's decision, a review of what the First Circuit did—and did not—do is warranted.

The First Circuit did not "reverse" any ruling by this Court, <u>see, e.g.</u>, Doc. No. 128 at 2; it <u>vacated</u> certain determinations based on errors it identified and explained, <u>see, e.g.</u>, <u>Sevelitte</u>, 55 F.4th at 82. Had it reversed outright this Court's decision that the Estate was entitled to the death benefit, the First Circuit would have required that the death benefit be distributed to Renee without the need for further proceedings (or, perhaps, it would have remanded to this Court with express instructions to enter such an order). That is not what happened. Instead, the First Circuit found that the Divorce Agreement was "at least ambiguous" as far as the Policy and the

paragraph most pertinent to its post-divorce status is concerned, and that Renee had alleged a "plausible" interpretation of the provision that was not "unambiguously foreclose[d]" by the plain language of the document. Id. at 83-84. This ambiguity "allowed Guardian to bring its interpleader action in good faith," id. at 84 n.14, and it required remanding the matter to this Court "to resume the second stage of the interpleader action," id. at 84.

The First Circuit did not make any findings of fact—regarding the Divorce Agreement or anything else. Renee's suggestion to the contrary, see Doc. No. 128 at 23, not only misinterprets the First Circuit's decision, but misunderstands the fundamental role of an appellate court and the standards governing motions litigated at the pleading stage of a case. When assessing motions brought under Rule 12, federal courts assume the truth of a plaintiff's well-pleaded facts and draw any available and reasonable inferences in the plaintiff's favor. Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018). Appellate courts apply the same standard when reviewing rulings resolving such motions. Id. This standard neither entails nor permits fact-finding. Because the First Circuit adhered to these familiar standards in this case, it did not "deci[de] . . . that the [Guardian] policy is directly referenced and mentioned" in the Divorce Agreement, as Renee now contends. Doc. No. 128 at 2. Nor did the First Circuit "f[i]nd the [Divorce] Agreement [satisfied] an exception to revocation on divorce." Id. at 3. Rather, after noting in the margin that "Guardian disputes whether" the Divorce Agreement "refers to the Policy," the First Circuit observed that the standard governing its review required it to "assume that [the Divorce Agreement] does" refer to the Policy (given Renee's allegation to that effect). Sevelitte, 55 F.4th at 77 n.1. Proceeding on the basis of that assumption, the First Circuit found "that the Divorce Agreement was ambiguous"—not that it unambiguously triggered the contract exception upon which the parties' competing claims depend. Id. at 82.

6

In all, the First Circuit <u>affirmed</u> (on different grounds) the entry of judgment on the pleadings in favor of Guardian, as well as all other aspects of this Court's orders related to Guardian. <u>Id.</u> at 86. It also <u>affirmed</u> the dismissal of all claims, by Renee and by the Estate, involving accounts and property other than the Policy proceeds. <u>Id.</u> The First Circuit <u>vacated</u> the entry of judgment on the pleadings in favor of the Estate, remanding for further proceedings as to that aspect of the interpleader action and related crossclaims by Renee and the Estate concerning disposition of the Policy proceeds. <u>Id.</u> The mandate issued on December 29, 2022. Doc. No. 84. This Court resumed its work as directed by inviting the parties' input regarding a schedule for discovery and dispositive motion practice. <u>See</u> Doc. Nos. 85, 87, 91.

In the wake of the First Circuit's decision, one question appeared central to all remaining claims: Does the Divorce Agreement, in a paragraph the First Circuit expressly found to be ambiguous, operate to avoid the presumption of revocation-on-divorce codified in the Massachusetts Uniform Probate Code by triggering one of the statutory exceptions to that presumption? To answer that question, development of the factual record was required.

C.   <u>Post-Remand Motion Practice</u>

Almost immediately after proceedings resumed in this Court, Renee filed the first in what would become a series of seven dispositive motions asking the Court to enter judgment in her favor on the basis of the First Circuit's decision. Doc. No. 92 (filed January 22, 2023); <u>see also</u> Doc. No. 95 (filed February 12, 2023); Doc. No. 97 (filed February 22, 2023); Doc. No. 101 (filed February 26, 2023); Doc. No. 108 (filed June 11, 2023); Doc. No. 118 (filed October 15, 2023); Doc. No. 123 (filed October 17, 2023). She embarked on this course despite having assented to a complete and routine discovery schedule only days earlier. Doc. No. 87; <u>see</u> Doc. Nos. 89, 91 (adopting the jointly proposed schedule, which mapped out deadlines for the events

that unfold during fact and expert discovery in ordinary civil cases, and which set a deadline for dispositive motions that was then nearly a year away). The Court denied each of Renee's motions. Doc. Nos. 94, 96, 100, 104, 110, 119, 127.

In this sequence of filings, and in other non-dispositive motions filed during the same period, Renee repeatedly disregarded requirements contained in this Court's orders and various Local Rules. See, e.g., Doc. Nos. 95, 111, 118 (lacking certificates of conferral as required by L.R. 7.1). The Court, in turn, repeatedly cited such noncompliance, often rejecting submissions on the basis thereof, and expressly reminded Renee and Attorney Fitzgerald of the potential consequences for failure to adhere to applicable orders and rules of procedure. See, e.g., Doc. Nos. 96, 100, 112; cf. Doc. No. 10 (notifying the parties of the Court's general practices and requiring compliance with them); L.R. 1.3 (authorizing sanctions for "[f]ailure to comply with any of the directions or obligations set forth in, or authorized by," the Local Rules). Renee persisted in filing dispositive motions even after the Court warned her—twice—that she, like most parties in most civil cases, would be permitted to litigate only one such motion. See Doc. No. 96 (warning that Renee would be allowed only one dispositive motion); Doc. No. 104 at 3-4 (referring to the prior warning, denying a dispositive motion on its merits, and stating no further such motions by Renee would be permitted "absent a showing of good cause"). Despite this admonition, Renee filed three further dispositive motions after the Court denied one on its merits. See Doc. Nos. 108, 118, 123. She did so without any showing of good cause, without seeking reconsideration of the Court's earlier rulings on her motions advancing the same arguments, and without identifying any new facts or law that would support a different result.

While Renee was engaging in this motion practice, the time to conduct fact discovery was elapsing. See Doc. No. 91. The Estate served discovery requests and deposed Renee.[5] See Doc. No. 126 ¶ 54; Doc. Nos. 126-1, 126-20, 126-22. Renee, on the other hand, elected not to take any discovery at all. See Doc. No. 128 at 3 (stating that Renee "did not wish to spend resources frivolously" and therefore took no discovery because "[t]he documents and decisions of the Courts in this matter speak for themselves"). When the period for expert discovery arrived, the Estate retained an attorney with substantial experience in family-related litigation, including divorce proceedings. See Doc. No. 126-5; cf. Doc. No. 117 (reflecting that the Estate noted its intent to hire an expert during an August 22, 2023 status conference). The Estate timely produced the expert's report to Renee. See Doc. No. 91 (setting September 15, 2023 deadline for expert disclosures); Doc. No. 117 (reiterating expert disclosure deadline); Doc. No. 128 at 9 (reflecting the Estate's lawyer emailed the report to Attorney Fitzgerald on the morning it was due).[6] Renee neither deposed the Estate's expert nor retained a rebuttal expert. See Doc. No. 126 ¶ 62.

When the deadline for dispositive motions arrived, the Estate sought and obtained a two-day extension, Doc. Nos. 120, 122, then filed its motion on October 18, 2023, Doc. No. 124.[7]

---

[5] Renee attempted to prevent the Estate from deposing her, asserting that her "deposition cannot generate any evidence of value," reiterating her belief that the First Circuit's decision conclusively resolved this dispute, and mischaracterizing the Estate's deposition notice (suggesting it contained an admission that it plainly did not). See Doc. No. 111 at 2; Doc. No. 111-1 at 3.

[6] To the extent Renee asks the Court to strike the Estate's expert report, the request is DENIED because it is not supported by any developed argument, coherent recitation of the record, or citation to specific legal authority. See Doc. No. 128 at 5-6 (containing only a general reference to "the Federal Rules of Civil Procedure").

[7] Renee received the same extension, Doc. Nos. 121, 122, but the motion she then filed (her seventh dispositive motion) failed to comply with the Court's various prior orders requiring a showing of good cause for another dispositive motion, see Doc. No. 127.

The Estate supported its motion with a Statement of Undisputed Facts ("SUF"), Doc. No. 126, as the Federal and Local Rules require, Fed. R. Civ. P. 56(c); L.R. 56.1. The Estate's SUF contained citations to supporting documents and was accompanied by nearly two dozen exhibits, allowing the Court to evaluate the cited sources.[8] Renee opposed the motion with a seven-page memorandum that included only one paragraph of "argument."[9] Doc. No. 128. She neither responded directly to the sixty-two facts contained in the Estate's SUF, nor did she address such facts in the text of her opposition.[10] See generally id. at 1-7. After the Estate filed a concise

---

[8] Renee suggests in her papers that the Court should not consider an affidavit the Estate obtained from the lawyer who represented Mr. Sevelitte when he and Renee divorced. See Doc. No. 126-4. In her opposition, Renee's challenge focuses on the fact that the affidavit was signed after the period for fact discovery had ended. Doc. No. 128 at 5. That argument fails. Renee does not suggest she was unaware of this attorney's role in the underlying events. Indeed, the fact that Mr. Sevelitte's lawyer would have information bearing on how to interpret the Divorce Agreement she negotiated is obvious. Nor does Renee argue she was prevented in any way from seeking discovery from this witness. To the contrary, she concededly chose not to engage in discovery at all. In any event, Rule 56(c)(4) permits the submission of affidavits and declarations in support of or opposition to summary judgment, so long as the facts conveyed "would be admissible in evidence" and the affiant "is competent to testify on the matters stated." Nothing before the Court suggests the affidavit submitted by the Estate fails to satisfy these requirements. To the extent Renee expands her challenge in her quasi-surreply to include a claim of privilege, Doc. No. 130 at 2, she has not properly advanced or supported such a claim. Cf. Doc. No. 128 at 5 (stating generally and without elaboration or citation that the Estate "introduces material not relevant, protected by privilege, and hearsay"). Her subsequent filing references a privilege applicable to "[s]ettlement communications" without citing a single case, rule, or other source of authority establishing the existence and contours of such a privilege. Doc. No. 130 at 2. This amounts to waiver of a privilege-based challenge to the affidavit. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see also In re Grand Jury Subpoena, 662 F.3d 65, 69 (1st Cir. 2011) ("The burden of showing that documents [or information] are privileged rests with the party asserting the privilege."). For all of these reasons, Renee's request to strike or disregard the affidavit is DENIED.

[9] Attached to her memorandum, Renee included the following exhibits (which, for the most part, duplicate items the Estate submitted and are not explained or specifically cited anywhere in Renee's memo): a September 15, 2023 email from the Estate's lawyer disclosing the expert report (with the report itself attached); and a copy of the document establishing a trust created by Mr. Sevelitte. Doc. No. 128 at 8-43.

[10] Her opposition does include a handful of inflammatory factual assertions without citation to any supporting evidence (admissible or otherwise). See, e.g., Doc. No. 128 at 4 (stating Robyn

10

reply brief pointing out Renee's failure to comply with Rule 56(c) and to establish "that any facts properly asserted by the Estate are disputed," Doc. No. 129 at 3, Renee responded "under duress" by doubling down on her view that the First Circuit's decision forecloses any material factual disputes and dispenses with the need for further evidence, Doc. No. 130. Rather than seeking to respond to the Estate's SUF directly, with citations to record evidence or other supporting documentation as the applicable rules require, Renee instead summarily suggested she satisfied the rules by making an unspecified "statement that did not agree with" the Estate's motion.[11]  Id. at 2.

Renee is wrong. This Court's Local Rules include the following requirement:

> A party opposing [a] motion [for summary judgment] shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. . . . Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.

L.R. 56.1 (emphasis added). Renee's failure to respond to the Estate's SUF—in the manner

---

"sent an ambulance away from her home," and claiming Mr. Sevelitte's death "could have been prevented"). The Court DISREGARDS all such assertions by Renee and STRIKES them from the record, as they are not advanced in compliance with Rule 56(c) or Local Rule 56.1, nor are they material to the issues now pending. Including such allegations in a legal memorandum without offering supporting documentation demonstrating there is an evidentiary basis for them is inappropriate and potentially sanctionable.

[11] Taken together, Renee's summary-judgment submissions fall far short of "the type of serious effort that allows" a court "to decide difficult questions, and doing her work for her is not an option, since that would divert precious judge-time from other litigants who could have their cases resolved thoughtfully and expeditiously because they followed the rules." Rodriguez-Machado v. Shinseki, 700 F.3d 48, 49-50 (1st Cir. 2012) (per curiam) (cleaned up). When it rejected her most recent two dispositive motions, the Court invited Renee to advance "her arguments for judgment . . . in opposition to any dispositive motion filed by the" Estate. Doc. No. 119; see Doc. No. 127 (reiterating invitation and noting it served to protect Renee's "substantive rights"). Rather than advancing substantial arguments in her summary-judgment papers, though, Renee opted to train her attention on the First Circuit's decision and repeat the same arguments the Court already had considered and rejected on their merits.

required by Local Rule 56.1, or at all—justifies treating the facts articulated and properly supported by the Estate as admitted for present purposes. See also Standing Order Regarding Briefing of Summary Judgment Motions for Judge Leo T. Sorokin's Session, https://www.mad. uscourts.gov/ boston/pdf/sorokin/LTS_Standing%20Order%20re%20Summary%20Judgment %20Rev.pdf [https://perma.cc/BK37-8XM8] (requiring the party opposing summary judgment to provide responses to the moving party's statement of facts and to submit "one combined statement" pairing each asserted fact with each response); Doc. No. 10 ¶ 3 (requiring counsel to review and comply with this Court's Standing Order on summary judgment). This is especially so where Renee is represented by counsel, and where the Court has time and again emphasized to Renee and Attorney Fitzgerald in this very action the need to comply with this District's Local Rules governing motion practice. Cf., e.g., Doc. No. 96 (noting specifically the need to "support[] all factual allegations with admissible evidence" at summary judgment). Her failure to adhere to such rules yet again, despite repeated warnings, was at her own peril.

    D.   <u>The Undisputed Facts</u>

    The Court now summarizes the material, undisputed facts. These facts largely come from the Estate's SUF. The Court has reviewed the exhibits cited in support of each fact therein and confirmed that, with the exception of a few minor typographical errors involving dates, the Estate's recitation is supported by admissible, uncontradicted evidence.

    Mr. Sevelitte married Renee in October 1986. On May 21, 1996, Mr. Sevelitte purchased the Policy, which has a death benefit of $75,000. The Policy's "Specifications" page refers to the "Plan of Insurance" as an "Ordinary Life Policy." Doc. No. 126-11 at 1. Nowhere does the Policy use the term "whole life insurance." See generally Doc. No. 126-11. The Policy does, however, include a table identifying the "Guaranteed Cash Value" in each year from 1997 to

2026. Id. at 2. Mr. Sevelitte identified Renee, who was his spouse at the time, as the primary beneficiary on the application for the Policy. Id. at 15. He identified no contingent beneficiary, and he never amended the beneficiary designation. The Policy is silent as to the effect of divorce on the beneficiary designation.

Mr. Sevelitte and Renee divorced in 2013. Both were represented by counsel, through whom they negotiated the Divorce Agreement. Attorney Valerie Ross represented Mr. Sevelitte. Exhibit G to the Divorce Agreement describes the parties' rights and obligations related to three insurance policies. The policies are not identified by policy number, nor are the insurance companies named. The Divorce Agreement does not describe these as the only policies either or both divorcing spouses possessed. Language elsewhere in the Divorce Agreement provides that Renee and Mr. Sevelitte each waived any interest in, and relinquished any cause of action related to, property owned by the other, the disposition of which was not specifically addressed by the terms of the Divorce Agreement.

The first four paragraphs of Exhibit G relate to a life-insurance policy held by Mr. Sevelitte at the time of the divorce with a $100,000 death benefit. That is not the Policy at issue here. The Divorce Agreement unambiguously preserved Renee's status as the beneficiary of that policy. Doc. No. 126-2 at 23 (Exhibit G, paragraph 1). This was done explicitly because Attorney Ross and Renee's lawyer understood that such express language would be required to avoid automatic revocation under Massachusetts law. They intended to ensure the beneficiary designation on this policy survived the divorce, as the obligation to maintain the policy was tied to Mr. Sevelitte's child-support obligation.[12]

---

[12] One of Renee's state-court lawsuits against the Estate alleged that Mr. Sevelitte had breached the Divorce Agreement by failing to maintain the insurance required by the first paragraphs of Exhibit G. A Justice of the Superior Court dismissed that claim, finding that because the

13

The fifth paragraph of Exhibit G relates to a "Mortgage Insurance/Life Insurance" policy that was already in place related to the marital home, where Renee continued to live after the divorce. That is not the Policy at issue here, either. The Divorce Agreement required only that the Mortgage Insurance policy "stay in full force and effect." Id. (Exhibit G, paragraph 5). Because the intended beneficiary was the bank holding the mortgage on the property, and the insurance was intended to ensure satisfaction of the mortgage in the event of Mr. Sevelitte's death, no additional language addressing the beneficiary was included in the Divorce Agreement.

The final paragraph of Exhibit G has been the focus of proceedings in this case. It says:

> The Parties acknowledge that the current Whole Life Insurance Policy shall remain in full force and effect and ownership of said policy is with the Husband. The Parties acknowledge that should the Husband elect to cash in said policy that the Wife shall be entitled to one half of the value of said policy at the time of the cashing in of said policy.

Doc. No. 126-2 at 24 (Exhibit G, paragraph 6) [hereinafter "Paragraph 6"]. This provision was not included in the original draft of the Divorce Agreement. It was added at Renee's request, and its specific terms were subject to back-and-forth negotiation, including as to ownership and control over the policy. See Doc. No. 126-4 ¶¶ 23-25. The focus of the parties at the time, and the purpose of the provision ultimately included, concerned how to apportion this policy's cash value—not its death benefit. The parties ultimately agreed Mr. Sevelitte would retain ownership of the "whole life" policy, but Renee would receive an equal share of the asset value if Mr. Sevelitte chose to surrender the policy for cash during his lifetime (an event that never, in fact,

---

Divorce Agreement unambiguously tied that insurance requirement to Mr. Sevelitte's child-support obligation, the requirement terminated in 2015 when the child at issue was emancipated. See Mem. of Decision & Order on Mot. to Dismiss at 7-8, Sevelitte v. Estate of Joseph F. Sevelitte, No. 2277CV00241-A (Mass. Super. Ct. Apr. 10, 2023) [hereinafter "Super. Ct. Mem."].

transpired).[13] Because the parties did not intend to require or maintain Renee's status as beneficiary of the death benefit—and because the "whole life" policy was not being used to secure any other payment obligation included in the Divorce Agreement—the lawyers intentionally did not include in Paragraph 6 language preserving Renee as the beneficiary of the "whole life" policy.

The Divorce Agreement was accepted by the state probate court and incorporated into its June 2013 Judgment of Divorce Nisi. Overall, it divided the relevant assets in a manner that favored Renee, allocating to her approximately sixty percent of the property at issue. Attorney Ross and the Estate's expert witness describe this distribution as generous to Renee and estimate that it falls near the upper limit of what a Massachusetts probate-court judge would typically approve absent special circumstances and without additional scrutiny.[14]

---

[13] The parties' compromise was both rational and in line with general principles of equitable distribution applied in Massachusetts. The Estate's evidence demonstrates that death benefits associated with insurance policies are typically included in the assets subject to division only when they are used to secure other payment obligations undertaken by a divorcing spouse (e.g., alimony or child support). The Policy was not used that way in the Divorce Agreement. Where an insurance policy has an associated, present-day cash value (as the Policy did), that cash value can be viewed as an asset subject to equitable distribution between the parties. It is that asset (i.e., the cash value) that Renee desired, and it was control of that asset (i.e., the ability to decide when and whether to cash the policy in) that Mr. Sevelitte was unwilling to surrender. Their competing positions were resolved by leaving control with Mr. Sevelitte, but promising Renee an equal share of the asset, should it be converted to cash—the value of which would increase over time, but would remain a fraction of the death benefit. This resolution accounted for the parties' concerns, is consistent with prevailing practice and governing law in this setting, and does not alter the overall proportions of the marital estate accorded to each spouse in the Divorce Agreement.

[14] Renee has advanced no challenge to the expert's credentials, nor to the substance or admissibility of her opinions. She also has not offered any evidence of her own, such as from the lawyer who represented her for purposes of the divorce, to dispute the Estate's evidence concerning the division of assets effected by the Divorce Agreement.

659

In 2015, Renee and Mr. Sevelitte signed a written modification amending certain terms of the Divorce Agreement.[15] First, Mr. Sevelitte's child-support obligation was eliminated. This had the effect of also terminating his associated obligation to maintain the $100,000 insurance policy described in the first four paragraphs of Exhibit G. See supra, note 12. Second, in place of the child-support obligation, Mr. Sevelitte agreed to pay alimony to Renee. To secure the new alimony obligation, Mr. Sevelitte was required to maintain a $50,000 life-insurance policy he had acquired through his employer and to ensure Renee was the designated beneficiary of that policy. Doc. No. 126-15 at 2. This, again, was done explicitly, to avoid the potential application of Massachusetts's revocation-on-divorce statute. Finally, Mr. Sevelitte and Renee agreed to sell the marital home, where Renee had been residing since the divorce. All other terms of the Divorce Agreement remained intact. The modification agreement does not reference Paragraph 6 or the Policy.

Mr. Sevelitte married Robyn in 2016. In January 2020, Mr. Sevelitte executed a will and established a family trust. These documents were prepared by Attorney Ross. Mr. Sevelitte named Robyn the personal representative of his estate and the trustee of the trust. He directed all of his assets to Robyn, except for a property that he devised to the trust, the terms of which grant Robyn a life estate in the property and make Mr. Sevelitte's son a contingent beneficiary entitled to the trust's assets when he turns forty-two. Neither the will nor the trust grant Renee any interest in Mr. Sevelitte's property or estate, and neither specifically addresses the Policy.

Mr. Sevelitte died on December 23, 2020, from complications he suffered as a result of contracting COVID-19. On January 8, 2021, Renee sent Guardian a form in which she claimed

---

[15] Like many contracts, the Divorce Agreement included standard "merger clause" language and a requirement that modifications be in writing (either signed by both parties or in the form of a court order). See Doc. No. 126-2 at 2, 6.

entitlement to the death benefit under the Policy. On a page entitled Claimant's Statement, Renee identified herself as Mr. Sevelitte's "spouse" and "next of kin." Doc. No. 126-12 at 4. (At the time, of course, she was neither.) Renee also electronically signed another page, beneath a statement warning of potential civil and criminal liability for filing insurance claims "containing any materially false information." Id. at 6. Along with the claim forms, Renee attached Mr. Sevelitte's death certificate—which, on its face, identified Robyn by name as Mr. Sevelitte's spouse. See Doc. No. 126-7. Discerning that Mr. Sevelitte and Renee had divorced, Guardian denied Robyn's claim, notified the Estate (which filed its own claim), and this litigation resulted.[16]

---

[16] Even after filing this lawsuit, Renee continued to challenge Guardian's denial via letters. In one letter dated April 3, 2023, Renee mischaracterized the terms of the Divorce Agreement, incorrectly claiming the Policy was identified therein as securing Mr. Sevelitte's alimony obligation. Doc. No. 126-22 at 1. That assertion is disproven by the Divorce Agreement and the 2015 modification to it, both of which are in the record here. In the same letter, she wrote that the First Circuit "called [Guardian's] actions a 'mistake.'" Id. The First Circuit's decision says no such thing; to the contrary, it found Guardian acted "reasonably" and in good faith. Sevelitte, 55 F.4th at 80-82.

In addition, Renee filed three other lawsuits in state court, bringing claims for damages against the Estate, Robyn, the Estate's lawyer, and Attorney Ross. Her son has petitioned to remove Robyn as the trustee and the personal representative of the Estate, and he has also filed civil and criminal complaints against Robyn. For her part, Robyn has sought declarations and orders regarding the validity and scope of her authority pursuant to Mr. Sevelitte's estate-planning documents. In all of these actions, Renee and her son are represented by Attorney Fitzgerald. The latest-filed lawsuit, against the Estate's attorney and Attorney Ross, was removed to this Court and promptly dismissed with prejudice, after significant pleading deficiencies were noted by the defendants and the Court. See Elec. Order, Sevelitte v. Ross, No. 23-cv-12471, ECF No. 21 (D. Mass. Dec. 5, 2023). A review of the state courts' dockets and publicly available written decisions suggests none of the claims Attorney Fitzgerald has pursued in these actions on behalf of Renee and her son have yet yielded a judgment on the merits in their favor.

661

II.   DISCUSSION

A.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  Once a party "has properly supported its motion for summary judgment, the

burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his

pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v.

Dynamics Rsch. Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 256 (1986)).  The Court is "obliged to []view the record in the light most favorable

to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."

LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  Even so, the Court is to ignore

"conclusory allegations, improbable inferences, and unsupported speculation." Prescott v.

Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co.,

896 F.2d 5, 8 (1st Cir. 1990)).  A court may enter summary judgment "against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).

Under Massachusetts law, "divorce typically revokes the beneficiary status of an ex-

spouse." Sevelitte, 55 F.4th at 75.  This occurs by operation of a provision in the Massachusetts

Uniform Probate Code that says:

> Except as provided by the express terms of a governing instrument, a court order,
> or a contract relating to the division of the marital estate made between the divorced
> individuals before or after the marriage, divorce, or annulment, the divorce or
> annulment of a marriage: (1) revokes any revocable (i) disposition or appointment
> of property made by a divorced individual to the individual's former spouse in a
> governing instrument . . . .

18

662

Mass. Gen. Laws ch. 190B, § 2-804(b).  For purposes of this statute, the term "governing

instrument" includes an insurance policy obtained before the divorce.  Id. §§ 1-201(19), 2-

804(a)(4).  Revocation pursuant to § 2-804(b) occurs "automatically . . . as a matter of law upon

divorce," unless one of the exceptions listed in the statute applies.  Sevelitte, 55 F.4th at 76;

accord Am. Fam. Life Assurance Co. v. Parker, 178 N.E.3d 859, 866 (Mass. 2022).

     The First Circuit already has determined that one exception does not apply: "Because the

Policy contains no language, express or otherwise, that maintains the beneficiary designation

after divorce, the express terms exception is not implicated here."  Sevelitte, 55 F.4th at 83

(footnote omitted).  The question before the Court, then, is whether the contract exception is

satisfied by the language of the Divorce Agreement.[17]  To answer this question, the Court turns

to settled principles of contract interpretation.

     Applying "Massachusetts law, interpretation of a contract is ordinarily a question of law

for the court."  Bank v. Int'l Bus. Mach. Corp., 145 F.3d 420, 424 (1st Cir. 1998) (cleaned up).

"Even if a contract . . . appear[s] ambiguous from its words alone, the decision remains with the

judge if the alternative reading is inherently unreasonable when placed in context."  McAdams v.

Mass. Mut. Life Ins. Co., 391 F.3d 287, 299 (1st Cir. 2004).  "Common sense is as much a part

of contract interpretation as is the dictionary or the arsenal of canons."  Fishman v. LaSalle Nat'l

Bank, 247 F.3d 300, 302 (1st Cir. 2001).  "In short, words matter; but the words are to be read as

---

[17] Renee also has pointed to the court-order exception, noting the Divorce Agreement was
incorporated into the Judgment of Divorce Nisi.  See Doc. No. 126-6.  She has not, however,
articulated any basis for finding that application of the court-order exception would entail
different analysis or yield a different result than the contract exception.  Cf. Parker, 178 N.E.3d
at 867 n.8 (declining to apply or analyze the court-order exception where the only court order at
issue merely incorporated a separation agreement between the parties, and where that agreement
was subject to analysis under the contract exception).  In these circumstances, Renee has
effectively waived the opportunity to advance a reasoned argument based on the court-order
exception.  See Zannino, 895 F.2d at 17.

elements in a practical working document and not as a crossword puzzle." Fleet Nat'l Bank v. H&D Entm't, 96 F.3d 532, 538 (1st Cir. 1996). Contract language is not to be read "in a vacuum"; rather, the text is considered "as a whole," and "surrounding text" can provide "further clarification." Minturn v. Monrad, 64 F.4th 9, 15-16 (1st Cir. 2023). In this process, "it is important to avoid interpretations . . . that render a word superfluous or redundant," id. at 18, and "to effectuate the parties' discerned intent," id. at 14. Contracts generally "should be interpreted as rational business instruments," id. at 19, and "in a manner that avoids absurd results," Wipro Ltd. v. Analog Devices, Inc., 527 F. Supp. 3d 93, 98 (D. Mass. 2021).

Though interpretation of ambiguous contract terms "normally" is a question for trial, a court may construe such terms at summary judgment "if the extrinsic evidence presented about the parties' intended meaning is so one-sided that" a reasonable person would be compelled to resolve the question in favor of the moving party. Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 784 (1st Cir. 2011) (cleaned up). This is such a case.

B.   The Contract Exception

Applying the foregoing principles to the record in this case, the Court finds that the Estate is entitled to summary judgment. There are no disputes about material facts for a jury to resolve. The language of the Divorce Agreement—read as a whole, considering the context in which it was executed, and illuminated by the uncontested extrinsic evidence the Estate has submitted—does not avoid the presumption under § 2-804(b) that Renee's beneficiary status was revoked upon her divorce from Mr. Sevelitte. No reasonable factfinder, confronted with the record before the Court, could conclude otherwise.[18]

---

[18] The Estate urges that there is no conclusive evidence in the record establishing that the Policy at issue in this lawsuit is the "whole life" policy addressed in Paragraph 6 of the Divorce Agreement, and that it is Renee's burden to provide such evidence. Doc. No. 125 at 14. Renee

As the First Circuit and at least one Massachusetts court have explained, Paragraph 6 is ambiguous; it requires that the referenced "whole life" policy "remain in full force and effect," but it is silent as to whether Renee must be retained as the primary beneficiary. Doc. No. 126-2 at 24; see Sevelitte, 55 F.4th at 83; Super. Ct. Mem. at 8. This ambiguity is conclusively resolved, however, by the one-sided evidence before the Court shedding light on the context and intended meaning of the provision. The record establishes that, when the lawyers representing Mr. Sevelitte and Renee for purposes of their divorce meant to preserve Renee's beneficiary status in connection with an insurance policy, they did so expressly. That is, they included language unambiguously requiring that Renee be named the beneficiary of such policies. They did not leave room for doubt. The lawyers took this approach twice: once in the Divorce Agreement, regarding the insurance policy intended to secure Mr. Sevelitte's child-support obligation, Doc. No. 126-2 at 23 (paragraph 1); and again in the modification, regarding the insurance policy intended to secure Mr. Sevelitte's alimony obligation, Doc. No. 126-15 at 2 (paragraph 7).

---

believes she need not offer such proof, because she reads the prior decisions by this Court and the First Circuit as having conclusively found such a connection. See, e.g., Doc. No. 126-1 at 5. Those decisions did no such thing; rather, as explained already, review at the pleading stage required this Court and the First Circuit to assume the truth of Renee's allegations, including her assertion that the Policy was the subject of Paragraph 6. The Estate correctly points out that Paragraph 6 does not name the Policy, cf. Super. Ct. Mem. at 8 (noting the court's inability to "determine which insurance policies are at issue" in provisions of the Divorce Agreement including Paragraph 6), and that the Policy does not use the term "Whole Life Insurance." However, the Policy does include a cash-value table, and there is no evidence before the Court revealing whether Mr. Sevelitte held any other "whole life" policies at the time of the Divorce Agreement. As such, though the Court notes there is good reason to question whether Renee would be able to prove at a trial that Paragraph 6 relates to the Policy, the Court does not rest its present ruling on this issue. Instead, it assumes again, as it did before, that the Policy is the subject of Paragraph 6 and explains why the Estate is entitled to summary judgment anyway.

21

The absence of such language in Paragraph 6 is evidence the parties did <u>not</u> intend to maintain her beneficiary status in connection with the "whole life" policy addressed therein. Indeed, the record establishes that they neither desired, nor believed the language they chose could accomplish, such a result. What the parties did intend—and what the language they chose does plainly provide—was for Renee to receive "one half of the value" of the "whole life" policy, "should [Mr. Sevelitte] elect to cash [it] in." Doc. No. 126-2 at 24. As Attorney Ross explains in her uncontroverted affidavit, the focus was on the cash value of the policy as an asset that was subject to equitable division as part of the marital estate. Doc. No. 126-4 at 5-6. The negotiations and ultimate agreement did <u>not</u> concern any claim to a future death benefit due under that policy. This is so because the parties understood that nothing in the Divorce Agreement or its later modification tied the "whole life" policy to any other payment obligation undertaken by Mr. Sevelitte, such that common practices and principles of Massachusetts matrimonial law would support including the policy's death benefit among the assets subject to division. <u>See</u> Doc. No. 126-5 at 5-6. Thus, all of the evidence provided concerning the context surrounding, and intent underlying, the drafting of Paragraph 6 establishes that the contract exception to § 2-804(b) is not satisfied here. There is no contrary evidence in the record.

If the one-sided state of the record as to the parties' intent were not enough reason to allow the pending motion, the Estate also has demonstrated that Renee's interpretation would work an absurd result. The record includes admissible evidence from both Attorney Ross and the Estate's expert establishing: 1) that awarding a divorcing spouse the death benefit of an insurance policy is disfavored under Massachusetts law, unless the policy is being used to secure a financial obligation imposed elsewhere in the contracts governing the divorce; and 2) that the equitable division to which the parties agreed in this case already granted Renee roughly sixty

22

percent of the marital assets, not including the $75,000 death benefit at issue here. <u>See generally</u> Doc. Nos. 126-4, 126-5. The same evidence further establishes that the "whole life" policy was not securing another financial obligation, and an agreement to grant Renee the death benefit in addition to the other property she received under the terms of the divorce would result in her receiving approximately eighty percent of the marital assets. Without any evidence justifying such a lopsided division of assets or showing a Massachusetts judge evaluated and approved such a result—and there is no such evidence here—such a construction of the parties' agreement would be irrational. Considering all of this, the Court concludes that Renee's reading of Paragraph 6 is not only unsupported by the record but is also entirely odds with fundamental principles of Massachusetts contract and matrimonial law.

In sum, Renee would bear the burden at trial of establishing she is entitled to the Policy's death benefit. Here, that means she would bear the burden of overcoming the presumption of revocation created by § 2-804(b) by establishing that one of the exceptions applies. Her failure to conduct discovery, refusal to engage with the Estate's evidence and arguments, and single-minded reliance on the First Circuit's decision render her unable to satisfy that burden—at trial, or now. As explained above, Renee's belief that the First Circuit expressly and conclusively resolved the legal effect of the Divorce Agreement vis-à-vis the Policy and its beneficiary designation finds no support in the plain language of the appellate decision itself. <u>See, e.g.</u>, <u>Sevelitte</u>, 55 F.4th at 81 ("The Divorce Agreement, not Guardian, is responsible for creating the ambiguity as to the beneficiary designation . . . ."); <u>id.</u> at 84 (observing that the Divorce Agreement "fails to explicitly name Renee as the continuing beneficiary," but reasoning that "we cannot say, at the Rule 12(c) stage, that the phrase 'full force and effect' cannot plausibly have been intended to retain the beneficiary designation"). This is a point the Court has explained to

Renee already. See Doc. No. 104 at 2-3; see also Super. Ct. Mem. at 8-9 (concluding the "full force and effect" language of Paragraph 6 "is susceptible of more than one meaning"). Yet, she has persisted in advancing that—and only that—position at every turn, to her detriment.

Straightforward application of familiar legal principles to the uncontested record evidence presented by the Estate establishes that, under Massachusetts law, Renee's status as primary beneficiary under the Policy was revoked automatically upon her divorce from Mr. Sevelitte. The Divorce Agreement does not avoid that result. Because this means the Policy names no beneficiary, the death benefit is payable to the Estate. Therefore, the Estate is entitled to judgment as a matter of law on the interpleader action, as well as on its remaining crossclaim against Renee.[19] The Estate also is entitled to judgment in its favor on Renee's remaining crossclaims.[20]

### III.  CONCLUSION

In sum, the Estate has supported its motion for summary judgment, and its reading of the Divorce Agreement, with citations to relevant legal authority and admissible evidence. Renee has opposed the motion by relying only on her incorrect interpretation of the First Circuit's decision. Accordingly, the Estate's motion (Doc. No. 124) is ALLOWED.

---

[19] Most of the Estate's crossclaims were dismissed previously, as they did not relate to the Policy. The Court's review of the record suggests, and the relief the Estate seeks in connection with its pending motion confirms, the only crossclaim involving the Policy (and, therefore, revived by the First Circuit's ruling) seeks a declaration that the Estate is entitled to the death benefit. See Doc. No. 20 at 6.

[20] Some of Renee's crossclaims, like those of the Estate, also were dismissed previously because they involved matters unrelated to the Policy. To the extent they relate to distribution of the Policy's death benefit, they fail for the same reasons identified above. To the extent Renee articulated a constitutional challenge to the revocation-on-divorce statute, Doc. No. 39 at 15-17, she has waived such a claim by failing to further develop it, see Zannino, 895 F.2d at 17, and, in any event, the Supreme Court has evaluated a similar statute and found no violation of the Contracts Clause, see generally Sveen v. Melin, 584 U.S. 811 (2018).

24

On the interpleader action and on the Estate's remaining crossclaims, judgment will enter in favor of the Estate and against Renee. Renee's remaining counterclaims are DISMISSED with prejudice. The death benefit from the Policy is, and shall remain, property of the Estate. A separate judgment will issue, memorializing the rulings just described.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

25

669

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RENEE SEVELITTE,<br>        Plaintiff and Crossclaim Defendant,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA,<br>        Defendant,<br><br>v.<br><br>ROBYN A. CAPLIS-SEVELITTE, AS<br>PERSONAL REPRESENTATIVE OF THE<br>ESTATE OF JOSEPH F. SEVELITTE,<br>        Third-Party Defendant and<br>        Crossclaim Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 21-10630-LTS |

## JUDGMENT

January 24, 2024

Pursuant to the Court's Order dated January 24, 2024 (Doc. No. 131), judgment is hereby entered: 1) in favor of Third-Party Defendant Robyn Caplis-Sevelitte, and against Plaintiff Renee Sevelitte, on the interpleader action brought by Guardian Life Insurance Company of America ("Guardian"); 2) in favor of Crossclaim Plaintiff Robyn Caplis-Sevelitte, and against Crossclaim Defendant Renee Sevelitte, on that much of Count I of the Crossclaim complaint (Doc. No. 20) that concerns the Guardian policy proceeds (Doc. No. 20); and 3) in favor of Crossclaim Plaintiff Robyn Caplis-Sevelitte, and against Crossclaim Defendant Renee Sevelitte, on Count IV, and that much of Count II that concerns the Guardian policy proceeds, of the Crossclaim Defendant's Counterclaims (Doc. No. 39). The Court awards the insurance policy proceeds previously on deposit with the Court to the Estate of Joseph F. Sevelitte and declares that the proceeds shall remain property of the Estate.

Other than those fees and costs expressly allocated already, each party shall bear its own fees.[1]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[1] All other claims, crossclaims, and counterclaims originally brought in this action were previously resolved as expressed in the February 25, 2022 Judgment (Doc. No. 78), and affirmed by the United States Court of Appeals for the First Circuit in its December 7, 2022 Decision and Judgment (Doc. Nos. 82, 83).

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RENEE SEVELITTE, | ) | |
| Plaintiff | ) | |
| v. | ) | |
| THE GUARDIAN LIFE | ) | C.A. No. 1:21-cv-10630LTS |
| INSURANCE COMPANY OF | ) | |
| AMERICA, | ) | |
| Defendant | ) | |
| v. | ) | |
| ROBYN A. CAPLIS-SEVELITTE, | ) | |
| PERSONAL REPRESENTATIVE | ) | |
| OF THE ESTATE OF JOSEPH F. | ) | |
| SEVELITTE, | ) | |
| Third-Party Defendant | ) | |

| | |
|---|---|
| ROBYN A. CAPLIS-SEVELITTE, | ) |
| PERSONAL REPRESENTATIVE | ) |
| OF THE ESTATE OF JOSEPH F. | ) |
| SEVELITTE, | ) |
| Crossclaim Plaintiff | ) |
| v. | ) |
| RENEE SEVELITTE, | ) |
| Crossclaim Defendant | ) |

674

# NOTICE OF APPEAL

Notice is hereby given that Renee Sevelitte, the Plaintiff in the above-named case, appeals to the First Circuit Court of Appeals items numbered 1, 2, and 3 of the Judgment entered in this action on January 24, 2024.

Dated February 9, 2024

*s. / W. Kevin Fitzgerald*
W. Kevin Fitzgerald
B.B.O. 169440
9A Simmons Road
Nahant, MA 01908

617-365-3477

```
MIME-Version:1.0
From:ECFnotice@mad.uscourts.gov
To:CourtCopy@localhost.localdomain
Message-Id:10697513@mad.uscourts.gov
Subject:Activity in Case 1:21-cv-10630-LTS Sevelitte v. The Guardian Life Insurance
Company of America Notice of correction to docket made by Court staff
Content-Type: text/html
```

**United States District Court**

**District of Massachusetts**

**Notice of Electronic Filing**

The following transaction was entered on 2/9/2024 at 5:55 PM EST and filed on 2/9/2024

**Case Name:**     Sevelitte v. The Guardian Life Insurance Company of America

**Case Number:**     1:21-cv-10630-LTS

**Filer:**

**WARNING: CASE CLOSED on 01/24/2024**

**Document Number:** 135(No document attached)

**Docket Text:**
 Notice of correction to docket made by Court staff. Correction: Docket Entry [133] Notice Of Appeal Corrected Because: The Notice of Appeal Was Filed Under the Wrong Appellate Event By Counsel Fitzgerald in Violation of Court Rules and CM/ECF Administrative Procedures. Please See ECF No. 134 for the Corrected Notice of Appeal. (Paine, Matthew)

**1:21-cv-10630-LTS Notice has been electronically mailed to:**

J. Christopher Collins     ccollins@mirickoconnell.com, rdelgado@mirickoconnell.com

Joshua N. Garick     joshua@garicklaw.com

William Kevin Fitzgerald     kfitzgerald@JACOBWIRTH.COM

**1:21-cv-10630-LTS Notice will not be electronically mailed to:**

ESSEX, SS.                                    SUPERIOR COURT DEPARTMENT

```
                                   )
RENEE SEVELITTE,                   )
        Plaintiff,                 )
                                   )
v.                                 )          No. 2277CV00241
                                   )
THE ESTATE OF JOSEPH F. SEVELITTE, )
ROBYN CAPLIS-SEVELITTE, PERSONAL   )
REPRESENTATIVE,                    )
        Defendant.                 )
                                   )          CONSOLIDATED WITH:
                                   )
RENEE SEVELITTE,                   )
        Plaintiff,                 )
                                   )
v.                                 )          No. 2277CV00326
                                   )
ROBYN CAPLIS-SEVELITTE,            )
        Defendant.                 )
                                   )
```

## CONSOLIDATED DEFENDANTS' ANSWERS TO INTERROGATORIES SERVED BY PLAINTIFF RENEE SEVELITTE

NOW COME the consolidated defendants including The Estate of Joseph F. Sevelitte,

Robyn Caplis-Sevelitte, Personal Representative (the "Estate") and Robyn Caplis-Sevelitte

("Robyn") (collectively "Defendants") who respectfully answer the first set of interrogatories

propounded by plaintiff Renee Sevelitte ("Renee") as follows:

### GENERAL OBJECTIONS:

GENERAL OBJECTION NO. 1: Defendants object pursuant to MASS. R. CIV. P. 33, as

the total number of questions, including subparts is 45 – an amount that exceeds the 30

interrogatory limit. Defendants have answered all questions and subparts notwithstanding this

objection, but do not waive the right to raise this issue at a later time.

1

GENERAL OBJECTION NO. 2: Renee has propounded a single set of interrogatories upon "defendants" without identifying which party (i.e., the Estate or Robyn) is requested to answer. Accordingly, the Defendants disclaim any confusion arising out of the answers in this regard.

## DEFINITIONS APPLICABLE TO ALL ANSWERS:

For purposes of clarity, the Defendants adopt the following definitions in their answers to these interrogatories.

➢ **Renee Sevelitte** ("Renee"): Renee is the plaintiff in both of these consolidated matters.

➢ **Robyn Caplis-Sevelitte** ("Robyn"): Robyn is the Personal Representative of the Estate. She is Joseph's widow and she is a defendant in one of the two consolidated actions.

➢ **Joseph F. Sevelitte, Jr.** ("Joseph"): Joseph is the decedent, the ex-wife of Renee and the wife of Robyn at the time of his passing on December 23, 2020.

➢ **The Estate of Joseph F. Sevelitte, Jr.** ("Estate"): The Estate is the legal estate of Joseph, of which Robyn has been named the Personal Representative. The Estate is a defendant in one of the two consolidated actions.

➢ **Joseph M. Sevelitte** ("Joseph M."): Joseph M. is the son of Joseph and Renee, and Robyn's stepson.

## ANSWERS AND SPECIFIC OBJECTIONS:

1) Please state every name you have ever used and address while using that name, whether the name was a married name, the years married, and any children you may have.

**OBJECTION: Defendants object to this Interrogatory to the extent it is vague, ambiguous, overly broad, unduly burdensome, harassing, it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, and without waiving the objection, my legal name is Robyn A. Caplis-Sevlitte, I married Joseph on October 8, 2016. All other information is being withheld pursuant to Rule 30A(2) based on the objections asserted herein.**

2) Please state every interaction you have had with the Massachusetts Court system, whether the incident was civil or criminal, and whether you were the plaintiff or defendant. Include any judgments, restraining orders, or other outcomes.

**OBJECTION**: Defendants object to this Interrogatory to the extent it is vague, ambiguous, overly broad, unduly burdensome, harassing, it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the extent the terms "interaction" and "Massachusetts Court system" are not defined and susceptible to multiple meanings. Notwithstanding and without waiving the objection, Defendants will identify only those cases involving the Defendants and either Renee or Renee's son Joseph M. Sevelitte (which are spearheaded by Renee). Pursuant to Mass. R. Civ. P. 33(c), the Defendants refer Renee to the dockets in those cases for further information relating to this request. These cases include:

➤ *Renee Sevelitte v. The Guardian Life Ins. Co. of America*, U.S.D.C., D. Mass. C.A. No. 1:21-cv-10630-LTS;

➤ *Renee Sevelitte v. The Estate of Joseph F. Sevelitte*, Essex Super. Ct., C.A. No. 2277CV00241;

➤ *Renee Sevelitte v. Robyn Sevelitte*, Essex Super. Ct., C.A. No. 2277CV00326;

➤ *Joseph M. Sevelitte v. The Estate of Joseph F. Sevelitte, Robyn Caplis-Sevelitte, Personal Representative*, Middlesex Prob. and Fam. Ct., Docket No. MI22E0017QC;

➤ *In re Estate of Joseph F. Sevelitte, Jr.*, Middlesex Prob. and Fam. Ct., Docket No. MI21P0872EA;

➤ *Joseph M. Sevelitte v. Robyn Caplis-Sevelitte, as Trustee of The Sevelitte Family Revocable Trust*, Somerville Dist. Ct., C.A. No. 2210CV000110;

➤ *Robyn Caplis-Sevelitte v. Joseph M. Sevelitte*, Middlesex Super. Ct., C.A. No. 2281CV03072;

➤ *The Sevelitte Family Revocable Trust v. Joseph M. Sevelitte*, Eastern Hous. Ct., Docket No. 22H84SP003357; and

➤ *Joseph M. Sevelitte v. Robyn Caplis-Sevelitte*, Somerville Dist. Ct., No. 2210AC000845.

3)     Please state your relationship to Joseph F. Sevelitte:
    a.     Date of his divorce
    b.     Date of your marriage
    c.     What was the date of Joseph F. Sevelitte's death
    d.     On what date was admitted to the hospital
    e.     How did he get to the hospital
    f.     On what day was he diagnosed with COVID

**OBJECTION**: Defendants object to this Interrogatory to the extent it is vague, ambiguous,

overly broad, unduly burdensome, harassing, it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory to the extent it seeks privileged information subject to the marital disqualification. The Defendants further object to the confusing nature of this request (including subparts). The Defendants construe this interrogatory to ask only what the relationship was between Robyn Sevelitte and Joseph F. Sevelitte, and all subparts flow from that question. Accordingly, notwithstanding and without waiving the objection, the Defendants state that Joseph F. Sevelitte is my deceased husband. I have not divorced Joseph F. Sevelitte – we were married at the time of his death. Our marriage was on October 8, 2016. He passed away on December 23, 2020. All other information is being withheld pursuant to Rule 30A(2) based on the objections asserted herein.

4) Have you read the Will of Joseph F. Sevelitte?
   a. Include any positions held by you in his estate?
   b. List all items you have inherited? (Whether tangible or intangible property)
   c. What insurance policies were inherited or claimed by you (include the name of the insurer, payment of premium, amount of policy coverage, and date of payment to you)?
   d. Please state the amount of the policy, issuing Insurance Carrier, the owner of the policy, and the named beneficiary (including any policy provided as part of his employment).
   e. Did you file joint tax returns?
   f. Please name the policies you have claimed by the insurer, insured owner, and evidence of ownership.
   g. Who informed you that you were the owner of the policy?
   h. Please name any insurance policy that you are the named beneficiary of when you applied for the beneficial interest and who if anyone helped you apply for the policy benefits.
   i. Proof of payment for a policy that shows you are the owner.

**OBJECTION:** Defendants object to this Interrogatory to the extent it is vague, ambiguous, overly broad, unduly burdensome, harassing, it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory to the extent it seeks privileged information and work product relating to the Defendants' litigation strategy and investigation. The Defendants further object to the confusing nature of this request (including subparts). The Defendants construe this interrogatory to ask whether Robyn Sevelitte has read Joseph's Will and all subparts flow from that question. Accordingly, notwithstanding, and without waiving the objection, Robyn Sevelitte states that she has read the Will of her deceased husband Joseph F. Sevelitte. To the extent each subpart of the interrogatory requests information relating to the Will, the defendants make express reference to the Will pursuant to Mass. R. Civ. P. 33(c).

With respect to life insurance proceeds, the Estate received a payment from the United States District Court, which were funds (paid into the Court's registry in an interpleader action) from Joseph's life insurance policy with Guardian Life Ins. Co. of America. The date received was in March of 2022 and the amount was $72,128.63. In addition, I, personally, received proceeds from a life insurance policy held with Unum Life Ins. Co. of America – a policy through Joseph's employer S. Strock & Co., Inc. Since I was named as the beneficiary, those funds were paid directly to me and did not pass through the Estate. I do not recall the exact amount (it was around $150,000) and I do not recall the date of distribution.

5. Please state if you have read the divorce agreement between Joseph F. Sevelitte and Renee Sevelitte
    a. Did anyone explain it to you?
    b. Did anyone make you aware that multiple insurance policies were owed to Renee?
    c. Are you aware that Joseph F. Sevelitte failed to honor his contracts?

**OBJECTION: Defendants object to this Interrogatory to the extent it is vague, ambiguous, overly broad, unduly burdensome, harassing, it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory to the extent it seeks privileged information and work product relating to the Defendants' litigation strategy and investigation. The Defendants further object to the confusing nature of this request (including subparts). The Defendants construe this interrogatory to ask whether Robyn Sevelitte has read the divorce agreement between Joseph and Renee, and all subparts flow from that question. Accordingly, notwithstanding, and without waiving the objection, Robyn Sevelitte states that she has read the divorce agreement between Joseph and Renee. To the extent each subpart of the interrogatory requests information relating to the divorce agreement, the defendants make express reference to the divorce agreement pursuant to Mass. R. Civ. P. 33(c).**

**Notwithstanding that response, Robyn further states that according to the express terms of the divorce agreement (as subsequently modified by the modification agreement), Renee is not entitled to any death benefits from any life insurance policy and, as a result, Joseph has not failed to honor his contracts as claimed in this interrogatory. Joseph expressed to me that Renee Sevelitte, as his ex-wife, was not to receive anything from his Estate. Those wishes appear to be made clear in his Will, the Divorce Agreement and the Modification Agreement.**

6. If you have read the will of Joseph F. Sevelitte
    a. Do you understand that you are specifically excluded from inheriting any cash?
    b. Are you aware the same prohibition is in the Sevelitte Family Revocable Trust?
    c. Has it been explained to you that this specific prohibition governs that any cash goes to next of kin?

**OBJECTION:** See answer and objection to Interrogatory No. 4, above. Notwithstanding the objection, and as discussed above, I have read Joseph's Will. The Will contains no such provision that excludes me, as his surviving spouse, from inheriting cash. On the contrary, all personal property not expressly gifted passes through the residuary clause of the Will (ARTICLE FOURTH). This provision, in no uncertain terms states as follows:

> FOURTH: I give the residue of my estate, other than any property over which I may have a power of appointment, to my wife, ROBYN CAPLIS-SEVELITTE, if she survives me, or if she does not survive me, then to my son, JOSEPH M. SEVELITTE.

Any cash, however received, would pass to me (or Joseph M., if had not survived Joseph at the time of his death) according to this ARTICLE FOURTH. I have been made aware that Renee Sevelitte has taken the clearly incorrect and tortured view of another article in the Will to suggest that I am not entitled to cash. Her reliance on ARTICLE SECOND is misguided. That article addresses "tangible personal property" which, coincidently, Joseph also left to me (or to Joseph M. had I not survived Joseph). In that article, the words "excluding cash, bank accounts, securities and the like" is used in a parenthetical to define tangible personal property.

So, as can be clearly seen, I am not excluded from inheriting any cash. However, even if ARTICLE FOURTH was not contained in Joseph's Will (or if Joseph died intestate), Renee Sevelitte, as Joseph's ex-wife, by virtue of his divorce from her, would not be an heir at law and would not, under any circumstances, receive any assets from Joseph's estate.

Similarly, the Sevelitte Family Revocable Trust ("Trust") contains no express provision that excludes me from inheriting any cash from Joseph's estate. The Trust, however, is irrelevant to this litigation and need not be thoroughly examined here.

7.  Please state the address of any real estate owned by you or in which you have any equity, beneficial interest or ownership interest of any kind in the title anywhere in the world.

    a.  Please state the name(s) in which the property was acquired and the date of any change of name of owners and current name holding title.

    b.  Please include all property that you may have a beneficial interest in.

    c.  Please list any Trust in which you have a beneficial interest.

    d.  Please list the address of any residence you have

        i.  Please state the purchase price, the amount of any mortgage debt, the appraised value on the property tax bill?

        ii.  For any trust please provide the trust name, the name of all trustees, the property held in the trust.

        iii.  Please state when any beneficial interest you have will vest or if it has vested in the trust assets.

**OBJECTION:** Defendants object to this Interrogatory to the extent it is vague, ambiguous, overly broad, unduly burdensome, harassing, it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. This case is about life insurance policies, not real estate. Accordingly, all information is being withheld pursuant to Rule 30A(2) based on the objections asserted herein.

8.      When did Renee Sevelitte begin litigation against either you or the estate of Joseph F, Sevelitte. Please state the court of jurisdiction, date of filing, and nature of litigation.

**ANSWER:** There are two cases in this consolidated action. The case against the Estate (Docket No. 2277CV00241) was filed with the Court by Renee on March 9, 2022. The case against Robyn, individually (Docket No. 2277CV00326) was filed with the Court by Renee on April 8, 2022. In both instances, this was beyond the one-year statute of limitations from the date of Joseph's death (i.e., December 23, 2020), as set out in G. L. c. 190B, § 3-803. In both instances, Renee failed to properly commence litigation pursuant to G. L. c. 190B, § 3-803 as Renee never served me via in-hand service and/or she failed to file a Notice of Claim with the Middlesex County Probate and Family Court. Accordingly, for purposes of G. L. c. 190B, § 3-803, these two actions were never formally or properly commenced.

9.      Did you and Joseph F. Sevelitte execute a prenuptial agreement?

**OBJECTION:** Defendants object to this Interrogatory to the extent it is vague, ambiguous, overly broad, unduly burdensome, harassing, it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. All information is being withheld pursuant to Rule 30A(2) based on the objections asserted herein.

10.    When did you apply for the benefits of the Guardian's whole life policy on the life of Joseph F. Sevelitte?
    a.    Did you apply for them personally?
    b.    Did you apply for them as the estate?
    c.    Please state why you applied more than once.
    d.    Please state if you had help filling out the benefits application form for this or any insurance policy.
    e.    Please identify all of the people who helped you.

**OBJECTION:** Defendants object to this Interrogatory to the extent it is vague, ambiguous, overly broad, unduly burdensome, harassing, it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory to the extent it seeks privileged information and work product relating to the Defendants' litigation strategy and investigation. Notwithstanding and without waiving the objection, pursuant to Mass. R. Civ. P. 33(c), reference is made to the claim form submitted by the Estate to the Guardian Life Ins. Co. of America.

11. Please state how much you have spent in legal fees in defense or prosecution of these matters, what the source of funds for legal fees has been?

**OBJECTION:** **Defendants object to this Interrogatory to the extent it is vague, ambiguous, overly broad, unduly burdensome, harassing, it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory to the extent it seeks privileged information and work product relating to the Defendants' litigation strategy and investigation. All information is being withheld pursuant to Rule 30A(2) based on the objections asserted herein.**

Signed under the pains and penalties of perjury this 25th day of August, 2023.

*/s/ Robyn Caplis-Sevelitte*
Robyn Caplis-Sevelitte

AS TO OBJECTIONS:

*/s/ Joshua N. Garick*

Joshua N. Garick (BBO #674603)
LAW OFFICES OF JOSHUA N. GARICK, P.C.
34 Salem Street, Suite 202
Reading, Massachusetts 01867
Phone: (617) 600-7520
E-mail: Joshua@GarickLaw.com

*Counsel for the Estate of Joseph F. Sevelitte,*
*Robyn Caplis-Sevelitte, Personal Rep.*

*and Counsel for Robyn Caplis-Sevelitte*

Dated: August 25, 2023

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the within document was this day served on all parties/counsel of record by e-mail.

*/s/ Joshua N. Garick*

Joshua N. Garick, Esq.

Dated: August 25, 2023

# Life Insurance Application (page 2 of 8)

## POLICY INFORMATION

Product Name: Homecertain
Amount of Insurance: $203,000. –
Initial Premium: $ 85.42
● Nontobacco
○ Tobacco

TERM: ● Level ○ Decreasing
Term Period (Number of Years): 30 yrs
Premium Guarantee Period: 15 yrs.

UNIVERSAL LIFE: ○ Level ○ Increasing
Planned Premium: $
Initial Allocation Percentage (for equity-indexed UL products only)
Equity Indexed Interest Option _____% Fixed Interest Option _____%

Mode of Payment (For bank draft, complete Bank Draft Plan authorization, and initial payment required.)
○ Annual ○ Quarterly ○ Bi-Weekly Bank Draft
○ Semi-Annual ● Monthly Bank Draft ○ Other _____

Payment in Exchange for Conditional Receipt: $ 85.42

Credit Card (See Instructions Page for current company practice) ○ Visa ○ Mastercard
Account Number:
Expiration Date:
Signature to Authorize Credit Card Charge:

*(No coverage will be effective except in accordance with the terms of the Receipt and unless full initial modal premium payment is submitted.)*

## ADDITIONAL BENEFITS - Primary Insured

**(Not all riders are available with all products or in all states)**

○ Accelerated Benefit Rider

○ Accidental Death Benefit Rider — Amount: $_____

○ Specific Medical Condition Accelerated Benefit Rider — Amount: $_____ *Supplemental questionnaire required.*

○ Disability Income Rider
Class: _____
Monthly Payout: $_____
○ 3 month elimination, 2 year benefit
○ 6 month elimination, 5 year benefit

○ Return of Premium Rider

○ Ultimate Income Option Rider — *Illustration required.*
Initial Lump Sum: $_____
Monthly Income of: $_____ for _____ years.
Final Lump Sum: $_____

○ Waiver of Monthly Deduction Rider (UL only)

○ Waiver of Premium Rider (Term only)

○ Child Rider — Amount: $_____ *Supplemental questionnaire required.*

○ Other: _____

# Life Insurance Application (page 1 of 8)



## INSURER

● Fidelity & Guaranty Life Insurance Company     ○ Americom Life & Annuity Insurance Company

## PRIMARY INSURED

**Name (First, M.I., Last)** Joseph F. Sevelitte, Jr.     **F & G REC'D JUL 30 2004**

**Home Address** 21 Spindletree Rd, Amesbury, MA 01913

**Social Security No.** ____ | **Sex** M | **Marital Status** Married | **Date of Birth** 11-21-60 | **Place of Birth** Somerville, MA | **Height (ft., in.)** 5'10" | **Weight (lbs.)** 300

**Currently Employed?** ● Yes ○ No | **Occupation and Duties** Fruit + Produce Sales | **Place of Employment** Greg Dzimia, Inc | **Years w/ Current Employer** 2 yrs.

**Earned Annual Income (from last year's W-2)** $110,000.- | **Drivers License Number and Issue State** MA 01954-6842

**Daytime Phone** 617-589-4411 | **Evening Phone** 978-334-3047 | **Best Time to Call** evenings | **Email Address**

## OTHER INSURED

**Name (First, M.I., Last)** | **Relationship to Primary Insured**

**Home Address**

**Social Security No.** | **Sex** | **Marital Status** | **Date of Birth** | **Place of Birth** | **Height (ft., in.)** | **Weight (lbs.)**

**Currently Employed?** ○ Yes ○ No | **Occupation and Duties** | **Place of Employment** | **Years w/ Current Employer**

**Earned Annual Income (from last year's W-2)** | **Drivers License Number and Issue State**

**Daytime Phone** | **Evening Phone** | **Best Time to Call** | **Email Address**

## OWNER(S)
*(UNLESS OTHERWISE NOTED, THE OWNER WILL BE THE PRIMARY INSURED.)*

**Name (First, M.I., Last)** | **Relationship to Primary Insured**

**Home Address**

**Home Phone** | **Email Address**

**Birth Date** | **Social Security No. or Tax I.D. No.**

## BENEFICIARY DESIGNATION - Primary Insured Coverage
*FOR EACH BENEFICIARY, LIST FULL NAME, RELATIONSHIP TO PRIMARY INSURED AND % SHARE.*

**Primary Beneficiary(ies)**    %    **Contingent Beneficiary(ies)**    %

Renee R. Sevelitte, Spouse, 100%    Joseph Maxon Sevelitte, son age 9, 100%

## BENEFICIARY DESIGNATION - Other Insured Coverage
*Unless otherwise noted in the Additional Information section, the beneficiary of other persons proposed for coverage will be the Primary Insured.*

Fidelity & Guaranty Life Insurance Company, Baltimore, Maryland • Americom Life & Annuity Insurance Company, Houston, Texas

ADMIN 496B (05-2003)        MA

## EXHIBIT G

## LIFE INSURANCE

1. In order to secure his obligations contained in this Agreement against the eventuality of his death, the Husband agrees that until the termination of his support obligations hereunder, the Husband shall obtain and/or maintain life insurance policies with a death benefit of not less than One Hundred Thousand ($100,000) Dollars. The life insurance policy shall name the Wife as Trustee for Joseph as the beneficiary.

2. The Husband agrees that he will not permit such insurance to lapse or expire and that he will not surrender, sell, assign, pledge, borrow against or in any other manner divest himself of the control of the policies, except upon the written consent of the Wife. Whenever reasonably requested by the Wife, the Husband shall furnish to her satisfactory evidence that said policies are in full force and effect.

3. If the Husband breaches the within provision, and such breach results in the Wife receiving less death benefits than she is entitled to receive under the terms of this Agreement, then the Wife shall have a valid creditor's claim against the Husband's estate for satisfaction in full of the contractual obligations of the Husband under this Agreement.

4. The parties agree that any life insurance policy obtained by either of the parties subsequent to the date of this Agreement shall be included in his/her obligation to maintain life insurance under the terms of this Agreement.

5. The Parties acknowledge that the Mortgage Insurance/Life Insurance policy on the marital home shall stay in full force and effect.

Initials:_____

23

Initials:_____

6. The Parties acknowledge that the current Whole Life Insurance Policy shall remain in full force and effect and ownership of said policy is with the Husband. The Parties acknowledge that should the Husband elect to cash in said policy that the Wife shall be entitled to one half of the value of said policy at the time of the cashing in of said policy.



# *QUITCLAIM DEED*



We, **JOSEPH F. SEVELITTE, SR. (A/K/A JOSEPH F. SEVELITTE)** and **ROSEMARIE SEVELITTE**, of Medford, Middlesex County, Massachusetts, for consideration paid, and in full consideration of One Dollar ($1.00)

grant to **JOSEPH F. SEVELITTE, JR.**, of 21 Spindletree Road, Amesbury, Massachusetts, Massachusetts

<div align="center">

*with quitclaim covenants.*

</div>

A certain parcel of land with the buildings thereon situated on the Easterly side of Allen Court, in Medford, Middlesex County, Massachusetts, being bounded and described as follows:

| | |
|---|---|
| <u>WESTERLY</u>: | By Allen Court, 70 feet; |
| <u>NORTHERLY</u> | By land now or formerly of Christopher McGrath et al., 96 feet; |
| <u>EASTERLY</u> | In Part by land now or formerly of Gillis et al and in part by land now or formerly of Carangelo, 66 feet; and |
| <u>SOUTHERLY</u>: | In part by land now or formerly of said Carangelo and in part by land now or formerly of Sanjean, 98 feet, 7 inches. |

Containing 6,544 square feet of land, be all of said measurements, more or less, or however otherwise bounded, measured or described

Together with the rights as set forth in a Deed dated February 4, 1935, and recorded with the Middlesex South District Registry of Deeds in Book 5902, Page 301.

We, **JOSEPH F. SEVELITTE, SR.** and **ROSEMARIE SEVELITTE**, do hereby reserve our rights under a Declaration of Homestead dated December 31, 2002 and recorded with the Middlesex South District Registry of Deeds in Book 37827, Page 240.

<div align="center">

**JOSEPH D. CATALDO**
ATTORNEY AT LAW
369 BROADWAY
EVERETT, MA 02149
617-331-9899

</div>

# ADDENDUM

Addendum 1

Copy of the Docket for 21-cv-10630 LTS

Addendum 2

Order on The Motion For Summary Judgment

Addendum 3

Judgment

Addendum 4

Notice of Appeal

Addendum 5

Defendant's Answers to Plaintiff's Discovery

Essex Superior Court

Addendum 6

Fidelity Term Life Insurance Policy

Exhibit G paragraph 5

Addendum 7

Quitclaim Deed 13 Allen Court, Medford, MA


Addendum 8

Exhibit G of the Agreement

6. The Parties acknowledge that the current Whole Life Insurance Policy shall remain in full force and effect and ownership of said policy is with the Husband. The Parties acknowledge that should the Husband elect to cash in said policy that the Wife shall be entitled to one half of the value of said policy at the time of the cashing in of said policy.